**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | |
|---|---|
| _____ ) | |
| AJMAL STEEL TUBES & PIPES INDUSTRIES ) | |
| LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 21-00587 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

/s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:

VANIA WANG
Attorney
Department of Commerce
Office of the Chief Counsel
for Trade Enforcement & Compliance

/s/ Kelly Geddes
KELLY GEDDES
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Tel: (202) 307-2867
Fax: (202) 353-0461

July 1, 2022

*Attorneys for Defendant*

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

_____
                                    )

AJMAL STEEL TUBES & PIPES INDUSTRIES  )
LLC,                                     )
                                     )
                Plaintiff,       )
                                     )
        v.                         )       Court No. 21-00587
                                   )
UNITED STATES,                )
                                   )
              Defendant.    )
_____)

## <u>ORDER</u>

Upon consideration of the motion for judgment upon the administrative record filed by plaintiff, responses thereto, plaintiffs' reply, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is DENIED;

ORDERED that the Department of Commerce's determination is affirmed in all respects; and it is further

ORDERED that judgment is entered in favor of the United States.

_____
                                   JUDGE

Dated: _____

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. ii

STATEMENT PURSUANT TO RULE 56.2(c)(1) ............................................................. 1

   I.   Administrative Determination Under Review ............................................ 1

   II.   Issues Presented For Review ....................................................................... 2

STATEMENT OF FACTS ................................................................................................... 2

SUMMARY OF THE ARGUMENT .................................................................................. 8

ARGUMENT ........................................................................................................................ 8

   I.   Standard Of Review ........................................................................................ 8

   II.   Commerce's Denial Of Ajmal's Untimely Extension Request Was Not An Abuse Of Discretion ................................................................................................. 10

   III.   Commerce's Application Of AFA To Ajmal Was Reasonable, Supported By Substantial Evidence, And In Accordance With Law ............................................. 17

      A.   Legal Framework ....................................................................................... 17

      B.   Ajmal Did Not Cooperate To The Best Of Its Ability .................................... 18

      C.   Commerce's Selection Of The AFA Rate Was In Accordance With Law ................... 20

CONCLUSION .................................................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*Am. Alloys, Inc. v. United States*, 30 F.3d 1469, 1475 (Fed. Cir. 1994) ........................................ 14

*Am. Silicon Techs. v. United States*, 261 F.3d 1371, 1376 (Fed. Cir. 2001) ................................. 15

*Artisan Manufacturing Corp. v. United States*, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014) ..... 20

*Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) ...................................... 15

*Celik Halat ve Tel Sanayi A.S. v. United States*, 557 F.Supp.3d 1363, 1369 (Ct. Int'l Trade 2022) ...................................................................................................................................................... 14

*Dongtai Peak Honey Indus. Co. v. United States*, 971 F. Supp. 2d 1234, 1239 (Ct. Int'l Trade 2014), *aff'd*, 777 F.3d 1343 (Fed. Cir. 2015) ............................................................................. 14

*Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) ............................... 14, 15

*Grobest & I-Mei Industrial (Vietnam) Co. v. United States*, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012) ....................................................................................................................................... 20

*Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997) ................................. 13

*Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) ..................... 15, 22, 24

*PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009) .......................................... 15

*PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012) ............... 13, 21

*Qingdao Sea Line Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014) ............. 19

*Shandong Huarong Gen. Corp. v. United States*, 159 F. Supp. 2d 714, 718 (Ct. Int'l Trade 2001) ...................................................................................................................................................... 15

*Stupp Corp. v. United States*, 5 F.4th 1341, 1350 (Fed. Cir. 2021) .............................................. 13

*Trinity Manufacturing, Inc. v. United States*, 549 F. Supp. 3d 1370, 1378-79 (Ct. Int'l Trade 2021) ...................................................................................................................................................... 21

*U.S. Steel Corp. v. United States,* 637 F. Supp. 2d 1199, 1218 (Ct. Int'l Trade 2009) ............... 19

*United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009) ........................................................ 14

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) ...................................................................................................................................................... 14

*Yantai Timken Co. v. United States*, 521 F. Supp. 2d 1356, 1370 (Ct. Int'l Trade 2007), *aff'd*, 300 F. App'x 934 (Fed. Cir. 2008) ................................................................................................ 14

## **STATUTES**

19 C.F.R. § 351.301 ...................................................................................................... 20

19 C.F.R. § 351.302 ........................................................................................ 9, 10, 15, 16

19 C.F.R. § 351.308 ...................................................................................................... 25

19 U.S.C. § 1516a ................................................................................................... 14, 19

19 U.S.C. § 1677e .............................................................................. 22, 23, 24, 25, 26

19 U.S.C. § 1677m ....................................................................................................... 22

## **ADMINISTRATIVE DETERMINATIONS**

*Extension of Time Limits*, 78 Fed. Reg. 57,790, 57,793 (Dep't of Commerce Sept. 20, 2013) .. 16, 21, 22

*KYD, Inc. v. United States*, 607 F.3d 760, 768 (Fed. Cir. 2010) .................................. 25

*Nan Ya Plastics Corp. Ltd. v. United States*, 810 F.3d 1333, 1347 (Fed. Cir. 2016) .................. 23

*Neo Solar Power Corp. v. United States*, 190 F. Supp. 3d 1255, 1262-63 (Ct. Int'l Trade 2016) 22

*Silicon Metal from Kazakhstan: Final Affirmative Countervailing Duty Investigation*, 83 Fed. Reg. 9831-01 (Dep't of Commerce Mar. 8, 2018), and accompanying Issues and Decision Memorandum ............................................................................................................ 20

*Welded Stainless Pressure Pipe from Thailand: Final Determination of Sales at Less Than Fair Value*, 79 FR 31093 (May 30, 2014) ........................................................................... 25

## **OTHER AUTHORITIES**

Carbon and Certain Alloy Steel Wire Rod from Mexico: Extension Request for New Factual Information in Response to Deacero's Supplemental Section D and E Questionnaire Responses (Aug. 25, 2017) ......................................................................................................... 19

Carbon and Certain Alloy Steel Wire Rod from the United Kingdom: British Steel Request for Extension (July 7, 2017) .............................................................................................. 20

Certain Cold-Rolled Steel Flat Products from Korea: Extension Request for Supplemental Section D Questionnaire Response (Jan. 5, 2016) .................................................... 19

Citric Acid and Certain Citrate Salts from Thailand: Section A-C Second Supplemental Questionnaire Response Extension Request (November 17, 2017) ......................... 20

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

———————————————————————

|  |  |
|---|---|
| AJMAL STEEL TUBES & PIPES INDUSTRIES LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| UNITED STATES, | ) ) ) |
| Defendant. | ) ) ) ) |

Court No. 21-00587

———————————————————————

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, defendant, the United States, respectfully submits this response to the motion for judgment upon the agency record filed by plaintiff Ajmal Steel Tubes & Pipes Industries, LLC (Ajmal). Because the Department of Commerce's (Commerce's) final results for the administrative review of the antidumping duty order on circular welded carbon-quality steel pipe (CWP) from United Arab Emirates (UAE) is supported by substantial evidence and otherwise in accordance with law, we respectfully request that the Court reject Ajmal's challenges and sustain Commerce's final results.

**STATEMENT PURSUANT TO RULE 56.2(c)(1)**

**I.      Administrative Determination Under Review**

Ajmal challenges Commerce's final results in the administrative review of the antidumping duty order of CWP from the UAE.  *See Circular Welded Carbon-Quality Steel Pipe from the United Arab Emirates*, 86 Fed. Reg. 59,364 (Dep't of Commerce Oct. 27, 2021) (final

results of administrative review), P.R. 130, and accompanying Issues and Decision

Memorandum (IDM), P.R. 127 (collectively, Final Results).  The administrative review covers

entries or sales of CWP from UAE made from December 1, 2018 through November 30, 2019.

*Id.*

## II.   **Issues Presented For Review**

1.      Whether Commerce's denial of Ajmal's untimely extension request was an abuse

of discretion.

2.      Whether Commerce's application of adverse facts available (AFA) to Ajmal was

reasonable, supported by substantial evidence, and in accordance with law.

3.      Whether Commerce's selection of an AFA rate was reasonable and in accordance

with law.

## STATEMENT OF FACTS

On February 6, 2020, Commerce initiated an administrative review of the antidumping

duty order on CWP from UAE.  *Initiation of Antidumping and Countervailing Duty*

*Administrative Reviews*, 85 Fed. Reg. 6,896 (Dep't of Commerce Feb. 6, 2020) (initiation

notice), P.R. 12, as corrected in *Initiation of Antidumping and Countervailing Duty*

*Administrative Reviews*, 85 Fed. Reg. 13,860, 13862 fn.6 (Dep't of Commerce Mar. 10, 2020),

P.R. 142.  On March 3, 2020, Commerce selected Ajmal and Universal Tube and Plastic

Industries, Ltd. (Universal) as mandatory respondents.  Respondent Selection Memorandum

(Mar. 3, 2020), P.R. 26, C.R. 5.  On the same day, Commerce issued questionnaires to Ajmal and

Universal, with the Section A response due March 24, 2020, and the sections B, C, D, and E

responses due on April 9, 2020.  Ajmal Questionnaire (Mar. 3, 2020), P.R. 24; Universal

Questionnaire (Mar. 3, 2020), P.R. 22.  The questionnaire specifically stated that:

2

Commerce must conduct this administrative review in accordance with statutory and regulatory deadlines.  If you are unable to respond completely to every question in the attached questionnaire by the established deadline, or are unable to provide all requested supporting documentation by the same date, you must notify the official in charge and submit a request for an extension of the deadline for all or part of the questionnaire response. . . .  If Commerce does not receive either the requested information or a written extension request before 5:00 p.m. ET on the established deadline, we may conclude that your company has decided not to cooperate in this proceeding.  *Commerce will not accept any requested information submitted after the deadline.*  As required by section 351.302(d) of our regulations, we will reject such submissions as untimely.  Therefore, failure to properly request extensions for all or part of a questionnaire response may result in the application of partial or total facts available, pursuant to section 776(a) of the Act, which may include adverse inferences, pursuant to section 776(b) of the Act.

Ajmal Questionnaire at 3 (emphasis added).

On March 19, 2020, Ajmal submitted a two-week extension request to extend the deadline for the Section A response to April 7, 2020.  Ajmal First Extension Request (Mar. 19, 2020), P.R. 33.  Ajmal requested the extension "due to the COVID-19 global pandemic" and more specifically because "protective measures are in place, such as, social distancing and Counsel working from home, which have resulted in a reduction in the number of personnel available, and a delay in document production."  *Id.*  On March 24, 2020, Commerce granted Ajmal's extension request in full for the reasons cited in Ajmal's extension request, extending the Section A response deadline to 5:00 p.m. Eastern Time (ET) on Tuesday, April 7, 2020.  Ajmal First Extension (Mar. 24, 2020), P.R. 35.  On April 3, 2020, Ajmal requested to extend the deadline for the Section A response to April 14, 2020, and to extend the deadline for the Section B-D response to May 14, 2020.  Ajmal Second Extension Request (Apr. 3, 2020), P.R. 39.  Ajmal stated that "due to the COVID-19 global pandemic, protective measures have been put in place by Counsel's firm and local, state, federal and foreign governments to ensure adequate social distancing" and "{b}oth in the United States and the UAE, only a limited number of

personnel are available to go into the office, and only with time restrictions." *Id.* Commerce granted Ajmal's extension request in full, extending the Section A response deadline to 5:00 p.m. ET on Tuesday, April 14, 2020, and the Section B, C, and D response deadline to 5:00 p.m. ET on Thursday, May 14, 2020. Ajmal Second Extension (Apr. 3, 2020), P.R. 40.

On April 14, 2020, Universal timely submitted its Section A response, but Ajmal did not. Universal Section A Response (Apr. 14, 2020), P.R. 41-47, C.R. 7-39. At 6:10 p.m., Ajmal filed an untimely request to extend the time to file its Section A questionnaire response "due to the large document size and other technical restraints from working from a laptop (e.g. programs crashing)." Ajmal Third Extension Request (Apr. 14, 2020), P.R. 48. Ajmal stated that "due to the large size of the response, we are currently experiencing technical difficulties that has led to a slight delay in submitting the questionnaire." *Id.* On April 16, 2020, Commerce denied the extension request because it was untimely and the claimed technical difficulties did not constitute extraordinary circumstances. Ajmal Third Extension Denial (Apr. 16, 2020), P.R. 49. Commerce also stated:

> We recognize that there are instances in prior cases (although not all), in which Commerce has accepted certain late filings resulting from law firm mistakes. However, as noted above, 19 CFR 351.302 expressly states that an untimely filed extension request will not be considered unless the party demonstrates that an extraordinary circumstance exists. Commerce intends to adhere strictly to the regulation that we promulgated. It takes a great deal of time and resources for Commerce to conduct administrative proceedings, and it is important that our procedures be as dependable, predictable and timely as possible.

*Id.*

On April 19, 2020, Ajmal submitted a request for reconsideration of the extension request, arguing that extraordinary circumstances were "created by COVID-19 global pandemic and associated disruptions." Ajmal First Reconsideration Request (Apr. 19, 2020), P.R. 50. On

April 24, 2020, Commerce issued a tolling memorandum in which Commerce tolled all deadlines by 50 days.  First Tolling Memorandum (Apr. 24, 2020), P.R. 51.  On May 7, 2020, Commerce denied Ajmal's first reconsideration request because Commerce continued to find that Ajmal's technical difficulties were not extraordinary circumstances.  Ajmal First Reconsideration Denial (May 7, 2020), P.R. 52.  Commerce observed that "{a}lthough your letter frequently references COVID-19, other law firms continue to submit timely-filed responses and timely filed extension requests in this case under the same technological constraints and pressures faced by Barnes, Richardson & Colburn LLP staff, including the other mandatory respondent Universal which submitted a timely response to the initial Section A questionnaire on that same day."  *Id.*  Commerce explained that "{i}t is also important, as a basic matter of fairness to all respondents, that Commerce enforce the rules fairly and not allow some parties to submit untimely extension requests or untimely questionnaire responses, when other parties have taken due care to turn in timely responses and/or timely extension requests under identical or similar circumstances."  *Id.*  Commerce further stated:

> We also note that the mere fact that your client provided its documents "only on April 14, 2020, {the day it was due} at 9:00 am," does not qualify as extraordinary circumstances under 19 CFR 351.302(c).  As your client's representative, it is your responsibility to ensure that your client provides information to you in a timely manner, or if that is not possible to request an extension in advance of the deadline.  Furthermore, your client is familiar with our procedures, as it requested this review of itself.  Thus, we disagree that the physical challenges referenced by Ajmal Steel "made it impossible to submit the extension request and Questionnaire Response in a perfectly timely manner."  Instead, Ajmal Steel, knowing that it was having issues, did not submit a request until after the deadline had passed.

*Id.* (citations omitted).

On May 13, 2020, Ajmal submitted another request for reconsideration of the extension request.  Ajmal Second Reconsideration Request (May 7, 2020), P.R. 53.  On May 15, 2020,

Commerce determined that Ajmal's second reconsideration request referenced new factual

information, which was not on the record.  NFI Determination (May 15, 2020), P.R. 54.

Commerce therefore provided Ajmal an opportunity to remedy these deficiencies and to place

the referenced letters on the record.  *Id.*  On May 19, 2020, Ajmal placed the new factual

information on the record.  NFI Response (May 19, 2020), P.R. 55.  On May 21, 2020,

Commerce held an *ex parte* meeting with Ajmal regarding its second reconsideration request of

its untimely filed extension request.  Ajmal Ex Parte Meeting Memorandum (May 21, 2020),

P.R. 57.  On June 3, 2020, Bull Moose and Wheatland Tube Company, the domestic interested

parties, requested that Commerce continue to reject Ajmal's untimely filed Section A

questionnaire response.  Domestic Interested Parties Request (June 3, 2020), P.R. 58.  On June 9,

2020, Ajmal responded to the domestic interested parties' request.  Ajmal Response to Domestic

Interested Parties (June 9, 2020), P.R. 59.  On July 6, 2020, Commerce denied Ajmal's second

reconsideration request.  Ajmal Second Reconsideration Denial (July 6, 2020), P.R. 72.

Commerce stated:

> As an initial matter, you have not demonstrated that the technical
> difficulties experienced by members of your law firm on April 14 were
> "an unexpected event."  The computer problems that you referenced (i.e.,
> those associated with conversion of files into PDF format and splitting up
> files into pieces) are routine occurrences for submissions made by all
> interested parties. . . .  Similarly, these technical difficulties did not
> preclude your law firm from timely filing an extension request.  Upon
> receiving the necessary information from your client, or at any point in
> time throughout the entire day on April 14, 2020, your staff could have
> notified Commerce that you would need additional time to submit a
> response because of technical difficulties you were facing. The process of
> submitting an extension request (which typically is only a few pages long)
> likely would not have resulted in the same disruptions you have claimed to
> experience for a large submission.  Additionally, your firm did not attempt
> to notify the ACCESS help desk about the technological difficulties your
> staff was facing.

*Id.*  (citations omitted).

6

On the same day, Ajmal submitted its Section B through D questionnaire response. Ajmal Section B-D Response (July 6, 2020), P.R. 65-71, C.R. 57-125.  On July 21, 2020, Commerce issued another tolling memorandum, tolling statutory deadlines for preliminary and final results in administrative review for sixty days.  Second Tolling Memorandum (July 21, 2020), P.R. 73.

On April 23, 2021, Commerce published its preliminary results.  *Circular Welded Carbon-Quality Steel Pipe From the United Arab Emirates*, 86 Fed. Reg. 21,688 (Dep't of Commerce Apr. 23, 2021) (preliminary results of review), P.R. 99, and accompanying preliminary decision memorandum (PDM), P.R. 92 (collectively, Preliminary Results). Commerce preliminarily determined that necessary information was not available on the record, and that Ajmal failed to provide information by the specified deadline and significantly impeded the proceeding.  PDM at 8.  Commerce also preliminarily determined that Ajmal failed to cooperate to the best of its ability, and as a result, Commerce used an adverse inference when selecting from among the facts otherwise available on the record (applied AFA).  PDM at 10. Commerce preliminarily selected the highest dumping rate in the petition, 54.27 percent, and corroborated this rate using Universal's highest, non-outlier, transaction-specific dumping margin(s).  PDM at 11.

After considering the interested parties' comments on the *Preliminary Results*, Commerce issued its Final Results.  *See* Final Results, 86 Fed. Reg. at 59,364.  Commerce continued to apply adverse facts available to Ajmal and assigned it the highest dumping rate in the petition as its AFA rate.  IDM at 19.

## SUMMARY OF THE ARGUMENT

Commerce's denial of Ajmal's untimely extension request was not an abuse of discretion. Commerce granted Ajmal two extensions to deal with the unexpected situation caused by the COVID-19 pandemic. Ajmal's third request may have arisen from that unexpected situation as well, but the direct cause of Amjal's failure to timely submit the response was that Ajmal did not provide its counsel with its Section A response until the morning of the filing deadline, and counsel was then unable to split and convert files to PDF for submission before the deadline. Ajmal could have taken reasonable measures to prevent such technical issues, and in any case, those issues do not explain why Ajmal did not at least file a timely extension request. Therefore, Commerce properly applied its regulatory framework and acted within its discretion in denying Ajmal's untimely extension request for its Section A questionnaire response.

Commerce's determination to apply adverse facts available to Ajmal was reasonable, supported by substantial evidence, and in accordance with law. The Section A questionnaire response was necessary information not available on the record, and Ajmal did not timely file its extension request or take reasonable measures to do so. Moreover, Commerce's selection of the AFA rate was reasonable and followed the statutory requirements. Accordingly, the Final Results should be sustained.

## ARGUMENT

### I.   Standard Of Review

Commerce is entitled to broad discretion regarding the manner in which it develops the administrative record in its proceedings. *See Stupp Corp. v. United States*, 5 F.4th 1341, 1350 (Fed. Cir. 2021) (citing *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012)); *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997); *Am.*

*Alloys, Inc. v. United States*, 30 F.3d 1469, 1475 (Fed. Cir. 1994)).  Indeed, "{a}bsent

constitutional constraints or extremely compelling circumstances{,} the administrative agencies

should be free to fashion their own rules of procedure and to pursue methods of inquiry capable

of permitting them to discharge their multitudinous duties."  *Vermont Yankee Nuclear Power*

*Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) (quotations and citations

omitted).  This Court thus has held that "{Commerce} has broad discretion to establish its own

rules governing administrative procedures, including the establishment and enforcement of time

limits."  *Yantai Timken Co. v. United States*, 521 F. Supp. 2d 1356, 1370 (Ct. Int'l Trade 2007),

*aff'd*, 300 F. App'x 934 (Fed. Cir. 2008); *Dongtai Peak Honey Indus. Co. v. United States*, 971

F. Supp. 2d 1234, 1239 (Ct. Int'l Trade 2014), *aff'd*, 777 F.3d 1343 (Fed. Cir. 2015).

Commerce's enforcement of its timeliness regulation is examined under an abuse of discretion

standard.  *See Celik Halat ve Tel Sanayi A.S. v. United States*, 557 F.Supp.3d 1363, 1369 (Ct.

Int'l Trade 2022) ("Decisions that an agency makes in the enforcement and administration of its

regulatory requirements that call for an exercise of discretion are examined according to an abuse

of discretion standard.")

　　　　Moreover, in reviewing Commerce's antidumping duty determinations, "the Court of

International Trade must sustain 'any determination, finding or conclusion found' by Commerce

unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance

with the law.'"  *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting

19 U.S.C. § 1516a(b)(1)(B)).  "The specific factual findings on which {Commerce} relies in

applying its interpretation are conclusive unless unsupported by substantial evidence."  *United*

*States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009).  Substantial evidence means "more than a

mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009). Crucially, "{e}ven if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." *Am. Silicon Techs. v. United States*, 261 F.3d 1371, 1376 (Fed. Cir. 2001) (citing *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1044 (Fed. Cir. 1996)). A party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal," *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted), and the Court will sustain Commerce's factual determinations as long as they are reasonable and supported by the record as a whole, even if some evidence detracts from them. *See Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984); *Shandong Huarong Gen. Corp. v. United States*, 159 F. Supp. 2d 714, 718 (Ct. Int'l Trade 2001).

## II. Commerce's Denial Of Ajmal's Untimely Extension Request Was Not An Abuse Of Discretion

Commerce's denial of Ajmal's untimely extension request was not an abuse of discretion. Commerce denied Ajmal's untimely extension request because Ajmal did not show that there were extraordinary circumstances as required for untimely extension requests to be considered pursuant to 19 C.F.R. § 351.302(c). IDM at 13; Ajmal Second Reconsideration Request Denial.

Section 351.302(c) states that a party may submit an extension request but must do so before the applicable time limit expires and specifies that "{a}n untimely filed extension request will not be considered unless the party demonstrates that an extraordinary circumstance exists." 19 C.F.R. § 351.302(c). An extraordinary circumstance is an event that:

   (i)    Could not have been prevented if reasonable measures had been taken, and
   (ii)   Precludes a party or its representative from timely filing an extension request through all reasonable means.

*Id.* In 2013, when Commerce added the extraordinary circumstance requirement for an untimely

extension request, Commerce elaborated:

> Examples of extraordinary circumstances include a natural disaster, riot,
> war, force majeure, or medical emergency. Examples that are unlikely to
> be considered extraordinary circumstances include insufficient resources,
> inattentiveness, or the inability of a party's representative to access the
> Internet on the day on which the submission was due.

*Extension of Time Limits*, 78 Fed. Reg. 57,790, 57,793 (Dep't of Commerce Sept. 20, 2013).

Here, Commerce found that Ajmal's technical difficulties did not constitute extraordinary

circumstances, and consequently found that Ajmal's untimely extension request did not meet the

requirement of 19 C.F.R. § 351.302(c). IDM at 13; Ajmal Second Reconsideration Denial.

Those technical difficulties stemmed from the large document size of the submission and

constraints from working using a laptop, such as "programs crashing multiple times." Ajmal

Third Extension Request; IDM at 13. Not only are these difficulties mundane, but they also only

prevented Ajmal from timely filing because Ajmal waited until the day of the deadline to provide

the Section A response to its counsel. Essentially, Ajmal failed to timely file because it did not

give itself enough time to deal with unexpected but common problems that arose during filing,

much like Commerce's example of a party who cannot access the Internet on the day of a

deadline. Commerce determined that such "technical difficulties could have been prevented or

addressed if reasonable measures had been taken." IDM at 13. "For example, the firm could

have enlisted the help of other paralegals and/or other attorneys to upload the submission or

separated the submission into smaller more manageable files." IDM at 13. "Furthermore, once

the paralegal was experiencing technical difficulties, the firm could have notified Commerce, but

Ajmal's counsel failed to notify Commerce through any means, official or unofficial, before the

deadline." IDM at 14. Moreover, Commerce granted two extensions in full for Ajmal's Section

A response prior to the untimely extension request.  Ajmal First Extension; Ajmal Second

Extension.  This meant that Ajmal had "forty-two days to submit its section A response (i.e.,

from March 3 to April 14, 2020), which is double the time initially allotted for Ajmal to submit

its response to section A of the questionnaire."  IDM at 13-14.

       Ajmal claims that its technical difficulties constituted extraordinary circumstances

because of the COVID-19 pandemic and the March 20 stay at home order.  Pl. Br. at 7-8.

However, the immediate cause of Ajmal's delay was that it did not provide its counsel with the

Section A response until the day of the deadline, and counsel then had difficulty processing the

large PDF documents on its laptop computers in time.  The assertion that such mundane

difficulties originally stemmed from the COVID-19 pandemic does not, in and of itself, render

the circumstances extraordinary, especially seeing as Commerce had already granted Ajmal two

extensions directly related to the COVID-19 pandemic.  In addition, "Commerce and many law

firms had already been remote working for a month when the response was due" and "other law

firms were able to timely file their submissions while working in such an environment."  IDM at

14.  *See also* Ajmal Second Reconsideration Denial at 3 (stating that "{t}he computer problems

that you referenced (i.e., those associated with conversion of files into PDF format and splitting

up files into pieces) are routine occurrences for submissions made by all interested parties" and

"{m}oreover, other law firms have continued to submit timely-filed responses and timely filed

extension requests in this case under the same technological constraints and pressures faced by

Barnes, Richardson & Colburn LLP staff, including the other mandatory respondent in this

proceeding, Universal, which submitted a timely response to the initial response to section A of

the questionnaire on April 14.").  "It is important that Commerce enforce the rules fairly and

impartially, and not grant some parties' untimely extension requests, when other parties have

taken due care to submit timely extension requests and responses under identical or similar circumstances." Ajmal Second Reconsideration Denial at 3.

Moreover, while the technical issues described by Ajmal could explain the delay in filing a large Section A response, it is difficult to see how they could have prevented Ajmal from timely filing a short request for an extension. Ajmal was able to timely its first two extension requests, which were similarly based upon the "protective measures . . . such as, social distancing and Counsel working from home, which have resulted in a reduction in the number of personnel available, and a delay in document production." *Compare* Ajmal First Extension Request and Ajmal Second Extension Request (requesting an extension of time based upon protective measures put in place because of the global COVID-19 pandemic) *with* Ajmal First Reconsideration Request and Ajmal Second Reconsideration Request (claiming that working from home because of the global COVID-10 pandemic made its third extension request unavoidably untimely).

Ajmal contends that Commerce's tolling memoranda demonstrate that its technical difficulties constituted extraordinary circumstances. Pl. Br. at 8-9. However, "a later tolling of deadlines in the proceeding does not absolve Ajmal of its responsibility to submit its responses in a timely fashion." IDM at 14. Ajmal acknowledges that the tolling memoranda did not actually apply to the deadline at issue, which had already passed, and therefore did not affect Ajmal's responsibility to timely file. *Id.* at 11. Nonetheless, it argues that "the tolling actions evidence the pervasive effects of COVID-19 on work and the unpredictability of operational adjustments." *Id.* However, Commerce tolled the deadlines in response to "unprecedented workloads," not because parties could not be expected to perform basic tasks such as processing large files on their computers. IDM at 14.

Ajmal argues that Commerce has granted late extension requests in other administrative cases.  Pl. Br. at 9-10.  However, that does not mean Ajmal was entitled to an extension in this case.  Commerce has the discretion to determine whether the facts of a particular case constitute "extraordinary circumstances," and in this case, it exercised its discretion by finding no such circumstances existed.  As the Federal Circuit has explained, "each administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record."  *Qingdao Sea Line Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014); *see also U.S. Steel Corp. v. United States,* 637 F. Supp. 2d 1199, 1218 (Ct. Int'l Trade 2009) ("Even assuming that Commerce's other Section 129 proceedings are factually identical to the case here, as a matter of law, each agency determination is *sui generis*, involving a unique combination and interaction of many variables, and therefore a prior administrative determination is not legally binding on other reviews before this court.").  The Court is not tasked with substituting its judgment for that of Commerce by comparing the particular facts of this case to other cases and determining whether they are materially distinguishable, but instead is limited to determining whether Commerce's decision was so unjustified as to constitute an abuse of discretion.

Further, two of the cited letters – Carbon and Certain Alloy Steel Wire Rod from Mexico: Extension Request for New Factual Information in Response to Deacero's Supplemental Section D and E Questionnaire Responses (Aug. 25, 2017) and Certain Cold-Rolled Steel Flat Products from Korea: Extension Request for Supplemental Section D Questionnaire Response (Jan. 5, 2016) – are not on the record.  By statute, Commerce bases its determinations upon the record developed during the administrative proceeding.  19 U.S.C. § 1516a(b)(1) & (2).  Letters from other administrative cases are considered new factual information that should be filed on the

14

record for Commerce to consider.  *Silicon Metal from Kazakhstan: Final Affirmative Countervailing Duty Investigation*, 83 Fed. Reg. 9831-01 (Dep't of Commerce Mar. 8, 2018), and accompanying Issues and Decision Memorandum at Comment 4.

The other two letters cited – Citric Acid and Certain Citrate Salts from Thailand: Section A-C Second Supplemental Questionnaire Response Extension Request (November 17, 2017) and Carbon and Certain Alloy Steel Wire Rod from the United Kingdom: British Steel Request for Extension (July 7, 2017) – were filed on the record.  *See* NFI Response at Exhibits 2 and 8. However, Commerce addressed these letters, explaining that the cases were dissimilar and those cases did not involve a situation in which "a respondent provided a document to its law firm the morning of the due date or { } the law firm had trouble converting its documents into PDF format while failing to notify Commerce it was having technological difficulties that inhibited its ability to meet the deadlines."  Ajmal Second Reconsideration Denial at 3.

Next, Ajmal contends that the untimely filing did not burden Commerce.  Pl. Br. at 10-12.  In making this argument, Ajmal relies on the outdated framework set forth in *Grobest & I-Mei Industrial (Vietnam) Co. v. United States*, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012), and *Artisan Manufacturing Corp. v. United States*, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014). As this Court recently explained:

> *Artisan* and *Grobest* involved the prior version of the Department's regulation, 19 C.F.R. § 351.301 (2012), which did not impose the current "extraordinary circumstance" requirement. . . . The current regulation defines how Commerce will exercise its discretion when it receives an untimely extension request. . . . The factors {derived from *Artisan* and *Grobest*} plaintiffs would have the court apply to resolve the current dispute do not mention the Department's interest in the orderly administration of the antidumping duty law and, specifically, its interest in deterring late filings for which extension requests are not made prior to the expiration of the filing period.  These interests are served by a rule confining the granting of such requests to extraordinary circumstances.

*Trinity Manufacturing, Inc. v. United States*, 549 F. Supp. 3d 1370, 1378-79 (Ct. Int'l Trade 2021).  *See also Extension of Time Limits*, 78 Fed. Reg. at 57,790 (modifying the regulations to include an extraordinary circumstances standard for all segments initiated on or after October 21, 2013).  When Commerce added the extraordinary circumstance requirement to the regulations, Commerce stated that "{o}nly if the Department determines that the party has demonstrated that extraordinary circumstances exist will the Department then consider whether the party has demonstrated that good cause exists for allowing an extension of the time limit pursuant to section 351.302(b)."  *See Extension of Time Limits*, 78 Fed. Reg. at 57,790.  Here, as explained above and in the Final Results, Ajmal's technical difficulties do not constitute extraordinary circumstances as required in Commerce's regulations.  Therefore, Commerce properly applied its procedural framework by refusing to consider Ajmal's untimely filing, regardless of whether admitting the filing would have been burdensome to Commerce.  "A court cannot set aside application of a proper administrative procedure because it believes that properly excluded evidence would yield a more accurate result if the evidence were considered."  *PSC VSMPO-Avisma*, 688 F.3d at 761.

In any case, Commerce explained in the IDM why Commerce's acceptance of Ajmal's late filing would result in more than a minimal burden.  Commerce "establishes deadlines so that it can conduct this administrative review (and its numerous other trade remedy proceedings) in an efficient manner within its statutory and regulatory deadlines.  Therefore, it is critical that parties file documents by the established deadline or timely request an extension of such a deadline."  IDM at 14.  "{U}ntimely filings and untimely extension requests hinder the efficient and timely conduct of our proceedings and lead {Commerce} to spend additional time and resources to address such untimely filings and requests."  IDM at 15. "{A}lthough the burden

associated with a single late-filed questionnaire response may be perceived as minimal, that burden is not minimal when aggregated across all proceedings."  IDM at 15.  *See also Extension of Time Limits*, 78 Fed. Reg. at 57,790 ("These modifications will diminish the cumulative impact of last-minute extension requests on the parties and the Department."); *Neo Solar Power Corp. v. United States*, 190 F. Supp. 3d 1255, 1262-63 (Ct. Int'l Trade 2016) ("Commerce does not allege any prejudice specific to this case, but it does allege the general prejudice stemming from late filings because of the strict statutory deadlines governing its determinations.").

For these reasons, Commerce did not abuse its discretion in denying the third request for an extension, and the Court should sustain that decision.

## III.   Commerce's Application Of AFA To Ajmal Was Reasonable, Supported By Substantial Evidence, And In Accordance With Law

### A.   Legal Framework

Commerce will rely on facts otherwise available to reach the applicable determination if "necessary information is not available on the record," 19 U.S.C. § 1677e(a)(1), or if an interested party: "(A) withholds information that has been requested by {the Department}; (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to {19 U.S.C. § 1677m(c)(1) and (e)}; (C) significantly impedes a proceeding under the antidumping statute; or (D) provides such information but the information cannot be verified as provided for in 1677m(i)."  19 U.S.C. § 1677e(a)(2)(A)-(D).

Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available" if it "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information{.}" 19 U.S.C. § 1677e(b)(1).  This standard "requires the respondent to do the maximum it is able to do."  *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).  "The statutory

trigger for Commerce's consideration of an adverse inference is simply a failure to cooperate to the best of respondent's ability, regardless of motivation or intent." *Id.* Pursuant to this standard, it is irrelevant whether the respondent was intentionally evasive or whether respondent thought it had a valid legal basis for withholding the information requested of it. *See Nan Ya Plastics Corp. Ltd. v. United States*, 810 F.3d 1333, 1347 (Fed. Cir. 2016) ("Congress decided what requirements Commerce must fulfill in reaching its determinations, § 1677e(b), and we do not impose conditions not present in or suggested by the statute's text.").

   **B.      Ajmal Did Not Cooperate To The Best Of Its Ability**

As a preliminary matter, to apply facts available, Commerce found that the Section A questionnaire response was necessary information and provided important links for the information provided in the Section B through D questionnaire responses. PDM at 8. Ajmal did not submit its Section A questionnaire response. IDM at 13. Therefore, Commerce determined that necessary information was not on the record, Ajmal failed to provide requested information by the specified deadlines, and Ajmal significantly impeded the proceeding under 19 U.S.C. § 1677e(a)(1), (2)(B), and (2)(C). PDM at 8-9. Each of these determinations was reasonable, and any one of them would independently support Commerce's use of facts available.

Commerce properly found that Ajmal failed to cooperate to the best of its ability within the meaning of 19 U.S.C. § 1677e(b)(1) because of its unjustified failure to file the Section A response by the deadline, and Commerce was therefore permitted to use an adverse inference in selecting from among the facts otherwise available on the record pursuant to that provision. Ajmal contends that Commerce's logic "is circular in that absent an error there would be no need to analyze the 'best of its ability' standard." Pl. Br. at 17. However, Commerce's finding that Ajmal did not cooperate to the best of its ability does not rest solely on the untimely filing but

18

also on the fact that the untimely filed extension request did not demonstrate extraordinary circumstances and that reasonable measures could have been taken to prevent the matter.  IDM at 16.  As Ajmal concedes, the best of its ability standard does not require perfection but does not condone inattentiveness, carelessness, or inadequate record keeping.  *Nippon Steel Corp.*, 337 F.3d at 1382-83.

Commerce found that "{b}eyond evidence such as the missed deadline and late extension request, there are several examples that meet the standard of 'inattentiveness, carelessness or inadequate record keeping.'"  IDM at 16.  "Ajmal's counsel admits that, despite extensions totaling approximately three weeks, Ajmal's counsel still only received the section A response from Ajmal for review at 9:00 a.m. the day it was due."  *Id.*  "Further, Ajmal's counsel states that the final submission was only put together by 3:00 p.m. that day, only two hours before the time limit for submission."  *Id.*  "Moreover, only after numerous failed attempts to finalize the document did the paralegal in charge of finalizing the document reach out to other staff for help. Even after this, only a single lawyer attempted to rectify the issues they encountered."  *Id.*  "Furthermore, at no point did Ajmal attempt to notify Commerce about the difficulties it was facing in filing its response, whether through official or unofficial channels, until after the deadline had already passed."  *Id.*  Therefore, Commerce reasonably concluded that because "Ajmal could have taken any number of additional steps to timely file Ajmal's response or an extension request, . . . Ajmal did not act to the best of its ability."  *Id.*  Commerce's determination as to Ajmal's failure to cooperate to the best of its ability within the meaning of 19 U.S.C. § 1677e(b)(1) should therefore be sustained.

C.     **Commerce's Selection Of The AFA Rate Was In Accordance With Law**

Commerce determined the AFA rate properly, in accordance with the statutory requirements.  When applying an adverse inference in selecting from facts otherwise available on the record, Commerce may rely on information from the petition, a final determination in the investigation, a previous administrative review, or any other information placed on the record. 19 U.S.C. § 1677e(b)(2); 19 C.F.R. § 351.308(c)(1)-(2).  Commerce's practice is to select the higher of the highest dumping margin alleged in the petition or the highest calculated rate of any respondent.  *See, e.g.*, *Welded Stainless Pressure Pipe from Thailand: Final Determination of Sales at Less Than Fair Value*, 79 FR 31093 (May 30, 2014), and accompanying IDM at Comment 3.   In this review, Commerce assigned the highest dumping rate in the petition as the AFA rate and corroborated the rate using Universal's (the other mandatory respondent's) highest, non-outlier, transaction-specific dumping margin(s).  IDM at 7.

Ajmal claims that Commerce's selected AFA rate was unduly punitive.  Pl. Br. at 14-16.  However, "an AFA dumping margin determined in accordance with the statutory requirements is not a punitive measure, and the limitations applicable to punitive damages assessments therefore have no pertinence to duties imposed based on lawfully derived margins."  *KYD, Inc. v. United States*, 607 F.3d 760, 768 (Fed. Cir. 2010).

Ajmal also argues that the selected rate is excessive in light of its own prior rates and the rate it believed should have been determined here, if Commerce had accepted its untimely filing.  Pl. Br. at 14-15.  However, the statute plainly states that Commerce is not required "to estimate what the . . . dumping margin would have been if the interested party found to have failed to cooperate under subsection (b)(1) had cooperated" or to demonstrate that the AFA rate "reflects an alleged commercial reality of the interested party."  19 U.S.C. § 1677e(d)(3)(A) and (B).  In

addition, "Commerce seeks to use a rate that is sufficiently adverse to effectuate the statutory purpose" of 19 U.S.C. § 1677e and "to incentivize respondents to cooperate . . . ."  IDM at 17. Commerce explained in the IDM that "cooperation" entails providing Commerce with complete and accurate information in a timely manner, as Ajmal failed to do.  IDM at 17.  Commerce properly applied the framework of the statute in selecting and then corroborating the rate, using Universal's highest, non-outlier, transaction-specific dumping margin(s), which exceeded the highest petition rate.  IDM at 7.  Thus, Commerce's selection of the AFA rate was statutorily proper and not punitive.   Accordingly, it is appropriate that the adverse inference would be higher than Ajmal's prior rates and the rate that might have applied if Ajmal had timely submitted its responses.

For these reasons, Commerce's selection of the AFA rate was in accordance with the law and should be sustained.

## CONCLUSION

For these reasons, we respectfully request that the Court deny Ajmal's motion and sustain Commerce's Final Results.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

/s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

21

OF COUNSEL:

/s/ Kelly Geddes

VANIA WANG
Attorney
Department of Commerce
Office of the Chief Counsel
for Trade Enforcement & Compliance

KELLY GEDDES
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Tel: (202) 307-2867
Fax: (202) 353-0461

July 1, 2022

*Attorneys for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the Rules of this Court and the Court's scheduling order in that it contains 7438 words, including text, footnotes, and headings.

<u>/s/ Kelly Geddes</u>