**UNITED STATES COURT OF INTERNATIONAL TRADE**

_____
                                                          )
AJMAL STEEL TUBES & PIPES                )
IND. LLC,                                                )
                                                          )          Hon. Jane A. Restani, Judge
                        _Plaintiff,_              )          Court No. 21-00587
            _v._                                       )
                                                          )
UNITED STATES,                                   )
                                                          )
                        _Defendant,_          _)_
                                                          )
            and                                        )
                                                          )
WHEATLAND TUBE COMPANY,           )
                                                          )
            _Defendant-Intervenor._)
_____)

### NOTICE OF SUPPLEMENTAL AUTHORITY

Defendant-Intervenor Wheatland Tube Company ("Wheatland") respectfully submits this Notice of Supplemental Authority to advise this Court of the recent decision in _Tau-Ken Temir LLP et al. v. United States_, CIT Court No. 21-00173, Slip Op. 22-82 (July 18, 2022) ("_Tau-Ken_"). This decision was issued 17 days after the July 1, 2022 deadline for Defendant's and Defendant-Intervenor's response briefs in this case.

The Court's decision in _Tau-Ken_ addresses the discretion of the U.S. Department of Commerce ("Commerce") to reject extension requests and untimely filed questionnaire responses. In _Tau-Ken_, plaintiffs claimed that they had technical difficulties prior to the 5:00 p.m. filing deadline and timely requested a third extension to submit their questionnaire response. _Tau-Ken_, Slip Op. at 4-5. Commerce did not respond to counsel's extension request prior to 5:00 p.m., and plaintiffs therefore received an automatic extension until 8:30 a.m. the following morning pursuant to Commerce's _Final Rule. Id._ at 5; _see also Extension of Time_

*Limits*, 78 Fed. Reg. 57,790 (Dep't Commerce Sep. 20, 2013) ("*Final Rule*"). However, Plaintiffs did not complete the filing until 10:11 a.m. the following morning. *Tau-Ken* at 5. Commerce then denied plaintiffs' request for an extension of time and rejected their response as untimely. *Id*. Plaintiffs twice requested the agency reconsider its decision, and Commerce rejected each of these requests. *Id*. at 13-14. As a result of plaintiffs' failure to timely file their response, Commerce relied on adverse facts available ("AFA") in its final determination. *Id*. at 6.

Upholding Commerce's determination, the Court found that plaintiffs failed to demonstrate that Commerce abused its discretion. *Id.* at 9. The *Tau-Ken* plaintiffs were represented by "experienced counsel" who had already timely requested and received two extensions from the agency. *Id.* at 14. Neither plaintiffs' technical difficulties nor their personnel issues related to COVID-19 prevented plaintiffs from filing an extension request sooner. *Id*. at 19. In addition, the court upheld Commerce's decision to apply AFA due to the gap in the record created by the rejection of plaintiffs' untimely filed response. *Tau-Ken* at 31.

The full slip opinion is attached to this Notice.

Respectfully Submitted,

/s/ Roger B. Schagrin
Roger B. Schagrin
Luke A. Meisner
Kelsey M. Rule
**SCHAGRIN ASSOCIATES**
900 Seventh Street, N.W.
Suite 500
Washington, D.C.  20001

*Counsel for Defendant-Intervenor*
*Wheatland Tube Company*

Dated: July 19, 2022

# EXHIBIT 1

Slip Op. 22-82

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TAU-KEN TEMIR LLP, and<br>JSC NMC TAU-KEN SAMRUK,<br><br>                        Plaintiffs,<br><br>     and<br><br>MINISTRY OF TRADE AND INTEGRATION OF<br>THE REPUBLIC OF KAZAKHSTAN,<br><br>                       Plaintiff-Intervenor,<br><br>     v.<br><br>UNITED STATES,<br><br>                       Defendant,<br><br>     and<br><br>GLOBE SPECIALTY METALS, INC., and<br>MISSISSIPPI SILICON LLC,<br><br>                       Defendant-Intervenors. | Before: Leo M. Gordon, Judge<br><br><br>Court No. 21-00173 |

**OPINION**

[Commerce's <u>Final Determination</u> sustained.]

Dated: July 14, 2022

     <u>Peter J. Koenig</u> and <u>Jeremy W. Dutra</u> of Squire Patton Boggs LLP, of Washington, D.C., for Plaintiffs Tau-Ken Temir LLP and JSC NMC Tau-Ken Samruk, and Plaintiff-Intervenor Ministry of Trade and Integration of the Republic of Kazakhstan.

     <u>Bret R. Vallacher</u>, Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., for Defendant United States.  On the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>L. Misha Preheim</u>, Assistant Director.  Of counsel was <u>Jared M. Cynamon</u>, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

     <u>Adam H. Gordon</u>, <u>Jennifer M. Smith</u>, <u>Lauren N. Fraid</u>, and <u>Ping Gong</u> of The Bristol Group PLLC, of Washington, D.C., for Defendant-Intervenors Globe Specialty Metals, Inc. and Mississippi Silicon LLC.

     Gordon, Judge: This action involves the U.S. Department of Commerce's ("Commerce") final affirmative determination in the countervailing duty ("CVD") investigation of silicon metal from the Republic of Kazakhstan.  <u>See</u> <u>Silicon Metal from the Republic of Kazakhstan</u>, 86 Fed. Reg. 11,725 (Dep't of Commerce Feb. 26, 2021) ("<u>Final Determination</u>"), and the accompanying Issues and Decision Memorandum, C-834-811 (Dep't of Commerce Feb. 22, 2021), https://enforcement.trade.gov/frn/summary/kazakhstan/2021-04032-1.pdf (last visited this date) ("<u>Decision Memorandum</u>").

     Before the court is the USCIT Rule 56.2 motion for judgment on the agency record filed by Plaintiffs Tau-Ken Temir LLP ("TKT") and JSC NMC Tau-Ken Samruk ("TKS") (collectively "Plaintiffs" or "TKT/TKS").  <u>See</u> Pl. Tau-Ken Temir LLP et. al.'s Rule 56.2 Br. for J. upon the Agency R., ECF No. 33[1] ("Pls.' Br.")[2]; <u>see also</u> Def.'s Resp. to Pls.' Mots. for J. upon the Agency R., ECF No. 37 ("Def.'s Resp."); Def.-Intervenors' Resp. Br. in Opposition to Pls.' Rule 56.2 Mot. for J. upon the Agency R., ECF No. 38; Reply Br. of Pl. Tau-Ken Temir LLP et. al., ECF No. 39 ("Pls.' Reply").  The court has jurisdiction pursuant to Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C.

---

[1] All citations to the parties' briefs and the agency record are to their confidential versions unless otherwise noted.

[2] Plaintiff-Intervenor, Ministry of Trade and Integration of the Republic of Kazakhstan, did not file its own USCIT Rule 56.2 motion, nor an opening or reply brief in its own right. Nevertheless, it appears to join and support Plaintiffs' motion, and briefs and arguments. <u>See</u> Pls.' Br. at 1; Pls.' Reply at 1.

§ 1516a(a)(2)(B)(i) (2018),[3] and 28 U.S.C. § 1581(c) (2018).  For the reasons set forth below, the court sustains Commerce's <u>Final Determination</u>.

## I. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).  More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. <u>Nippon Steel Corp. v. United States</u>, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006); <u>see also</u> <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>DuPont Teijin Films USA v. United States</u>, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  <u>Consolo v. Fed. Mar. Comm'n</u>, 383 U.S. 607, 620 (1966).  Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review.  3 Charles H.

---

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

Koch, Jr. & Richard Murphy, Administrative Law and Practice § 9.24[1] (3d ed. 2022).

Therefore, when addressing a substantial evidence issue raised by a party, the court

analyzes whether the challenged agency action "was reasonable given the circumstances

presented by the whole record."  8A West's Fed. Forms, National Courts § 3.6 (5th ed.

2022).

## II. Background

In the underlying investigation, Commerce sought information via Section III of its

Initial Questionnaire regarding entities either cross-owned or affiliated with TKT and TKS,

the mandatory respondents.  See Decision Memorandum at 15.  TKT/TKS filed a timely

response to the affiliation portion of the Initial Questionnaire.  Id.  Commerce

subsequently sought supplemental information relative to Plaintiffs' response and

information regarding two other affiliated entities (collectively "First Supplemental

Questionnaire").  Acting on separate requests from TKT/TKS, Commerce twice extended

the filing deadline for Plaintiffs' response to the First Supplemental Questionnaire,

with an ultimate due date of September 15, 2021.[4]  Id.

On September 15th, Plaintiffs' counsel ("Counsel") found that it was unable to meet

Commerce's 5:00 pm filing deadline for filing its response to the First Supplemental

Questionnaire because of technical/computer problems with the data supplied

---

[4] The September 15th deadline was for Plaintiffs' response to the First Supplemental
Questionnaire.  Commerce made a further request for affiliation information for a third
entity with a filing deadline of September 25, 2021.  See Decision Memorandum at 15.
That information request is not the subject of this action.

by Plaintiffs and with its submission to Commerce via the ACCESS system.[5]  Id. at 6.

Faced with these problems, Counsel, at 3:50 pm, one hour and 10 minutes prior to the

5:00 pm filing deadline, filed a request for a third extension—this time for one day.

Commerce was unable to act on Plaintiffs' request before the close of business at 5:00 pm

on September 15th, so TKT/TKS received an automatic extension until 8:30 am on the

next work day, September 16th.  Id. at 15 (citing Extension of Time Limits, 78 Fed. Reg.

57,790 (Dep't of Commerce Sept. 20, 2013) ("Final Rule") (modifying 19 C.F.R.

§ 351.302, regulation governing extension of time limits in antidumping and countervailing

duty proceedings)); see also 78 Fed. Reg. at 57,792 ("For submissions that are due

at 5:00 p.m., if the Department is not able to notify the party requesting the extension

of the disposition of the request by 5:00 p.m., then the submission would be due by the

opening of business (8:30 a.m.) on the next work day.")).

  Throughout the evening on September 15th and the early morning

of September 16th, Counsel attempted to resolve its technical/computer problems and

file Plaintiffs' response to the First Supplemental Questionnaire, but was unable

to complete the entirety of the filing until 10:11 am on September 16th, one hour and

41 minutes beyond the 8:30 am deadline.  Decision Memorandum at 16.  Commerce then

denied Plaintiffs' request for an extension of time and rejected Plaintiffs' response

to Section III of the Initial Questionnaire as well as the First Supplemental Questionnaire

(collectively "Plaintiffs' Response") as untimely.  See id. at 20–21 (citing Commerce's

---

[5] ACCESS is Commerce's electronic database and Internet filing system used by parties
participating in an antidumping or countervailing duty proceeding.

Rejection Letter, PR[6] 238 (Oct. 1, 2020) ("First Rejection Letter") and Commerce's Denial of Second Request for Reconsideration, PR 319 (Nov. 19, 2020) ("Second Rejection Letter")).  As a result of Plaintiffs' failure to make a timely filing, Commerce relied on facts otherwise available with adverse inferences ("AFA") in reaching its final determination to countervail certain subsidies provided by the Government of Kazakhstan.  Id. at 4. Additionally, Commerce rejected Plaintiffs' argument that a conflict-of-interest claim raised by Petitioners (Defendant-Intervenors in this action) interfered with Counsel's ability to file a timely response on behalf of Plaintiffs.  Id. at 32–33.

TKT/TKS now challenge Commerce's denial of Plaintiffs' extension request, as well as Commerce's determination to reject Plaintiffs' Response, and Commerce's resulting determination to use AFA.  See Pls.' Br. at 4–22; 33–34.  Plaintiffs also challenge Commerce's refusal to take corrective action with respect to the conflict-of-interest claim raised by Petitioners, who Plaintiffs maintain interfered with its ability to timely file a response.  See id. at 26–33.

### III. Discussion

### A. Framework

19 C.F.R. Part 351 sets forth the procedures before Commerce in an antidumping or countervailing duty proceeding, with Subpart C—§§ 351.301–351.313—governing the submission of factual information, argument, and other material.  Section 351.301 provides the time limits for the submission of factual information, while the rules for filing,

---

[6] "PR ___" refers to a document contained in the public version of the administrative record, which is found in ECF No. 22-2 unless otherwise noted.

including electronically in ACCESS, are contained in § 351.303.  The latter regulation specifically requires that a filing "must be received successfully in its entirety" via ACCESS "by 5 p.m. Eastern Time on the due date."  19 C.F.R. § 351.303(b).

Prior to the expiration of any time limit established by Part 351, a party may request, in writing, an extension of time.  Id. § 351.302(c); see also Final Rule, 78 Fed. Reg. at 57,790 ("Th[is] modification clarifies that parties may request an extension of time limits before any time limit established under Part 351 expires.").  Upon receipt of a timely filed request for an extension, Commerce may, for good cause shown, extend a time limit, except where precluded by statute.  Id. § 351.302(b); see also Final Rule, 78 Fed. Reg. at 57,791 ("This modification is … consistent with section 351.302(b), which provides that the Secretary may, for good cause, extend any time limit established under this part.").

Unless an extension is granted, Commerce will reject any untimely filed factual information, written argument, or other material with a written notice explaining the reasons for the rejection.  Id. §§ 351.302(d)(2); 351.301(c)(1).  Additionally, Commerce will not consider nor retain such information, argument, or other material in the official record of the subject proceeding.  Id. § 351.302(d)(1)(i).

"Commerce has discretion both to set deadlines and to enforce those deadlines by rejecting untimely filings."  Grobest & I-Mei Indus. (Vietnam) Co. v. United States, 36 CIT 98, 122, 815 F. Supp. 2d 1342, 1365 (2012) (citing NTN Bearing Corp. v. United States, 74 F.3d 1204, 1206–07 (Fed. Cir. 1995)).  Agency decisions on acceptance or rejection of documents submitted for the record are reviewed for abuse of discretion.  Id.; see also Maverick Tube Corp. v. United States, 39 CIT ___, ___, 107 F. Supp. 3d 1318,

1331 (2015) ("Strict enforcement of time limits and other requirements is neither arbitrary nor an abuse of discretion when Commerce provides a reasoned explanation for its decision.").  "Judicial review of agency discretionary decisions … is supposed to be highly deferential."  33 Fed. Prac. & Proc. Judicial Review § 8411 (2d ed. 2022).[7]

"An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." Consol. Bearings Co. v. United States, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (citation omitted); see also Nat'l Wildlife Federation v. Nat'l Marine Fisheries Serv., 422 F. 3d 782, 798 (9th Cir. 2005) ("An abuse of discretion is 'a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found.'" (citation omitted)).

## B. Denial of Extension Request and
## Rejection of TKT/TKS's Questionnaire Response

The parties agree that Plaintiffs filed a third request for an extension of time on a timely basis, i.e., prior to the 5:00 pm deadline on September 15th, and that § 351.302(b) imposes a "good cause" standard on a party seeking an extension of time.  E.g., Pls.' Br. at 6–7; Def.'s Resp. at 5, 7.  Where the parties, however, diverge is on whether

---

[7] "To capture the notion that judicial review of agency discretion should be strongly deferential, the Administrative Procedure Act (APA), along with many agency enabling acts, instructs courts to set aside such determinations only if they are 'arbitrary,' 'capricious,' or amount to an 'abuse of discretion.'  These three terms are essentially synonymous."  33 Fed. Prac. & Proc. Judicial Review § 8411.

Commerce abused its discretion in denying Plaintiffs' extension request and rejecting the filing of Plaintiffs' Response as untimely.

As to whether Commerce unreasonably denied Plaintiffs' extension request, it appears that Plaintiffs fail to develop an argument demonstrating that Plaintiffs satisfied the "good cause" standard.  There is no language in either Plaintiffs' USCIT Rule 56.2 Brief or Reply Brief directly addressing how Commerce abused its discretion.  See generally Pls.' Br. & Pls.' Reply (mentioning "good cause" only once, in a quotation from the Decision Memorandum, and developing no argument as to that standard).  Under these circumstances, the court could deem this issue waived.  See United States v. Great Am. Ins. Co., 738 F. 3d 1320, 1328 (Fed. Cir. 2013) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived.").; United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990 ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Giving Plaintiffs the benefit of the doubt, it may be that TKT/TKS combined arguments regarding "good cause" and the denial of the third extension request with arguments challenging Commerce's rejection of Plaintiffs' Response.  Assuming that is the case, Plaintiffs have not shown that Commerce abused its discretion in denying Plaintiffs' extension request.

Despite receiving full information from Plaintiffs in response to the First Supplemental Questionnaire at approximately 11:00 am on September 15th, Counsel believed it was possible to file the entirety of that submission prior to the 5:00 pm deadline. Decision Memorandum at 16 (citing TKT/TKS's Administrative Case Brief at 6, PR 338 (Jan. 4, 2021); TKT/TKS's Request for Reconsideration of Acceptance of Questionnaire Response at 2, PR 241 (Oct. 2, 2020) ("Request for Reconsideration")); see also Extension of Time Request, PR 220 (Sept. 15, 2020) ("TKT/TKS's EOT Request")). Similarly, Counsel indicated that it experienced technical/computer problems when initially attempting to file on ACCESS; yet again, it continued to believe that these problems were fixable before the 5:00 pm filing deadline on September 15th. Id. (citing Request for Reconsideration).  However, later that afternoon, Counsel determined that meeting the filing deadline was not possible, so it filed a request for a one-day extension, until 5:00 pm on September 16th.[8]  See TKT/TKS's EOT Request.  As noted previously, Commerce was unable to notify Plaintiffs of the disposition of its request for an extension prior to 5:00 pm that day.  Consequently, pursuant to § 351.103(b) and the Final Rule,

---

[8] The substance of Plaintiffs' request was:

> Tau-Ken Temir LLP (TKT) requests a one day extension from today September 15, 2020 to tomorrow September 16, to answer the subsidy questionnaire, including as to cross-owned companies.  They have worked flat out to get this done.  We have now received full response but are some technical/computer issues to resolve to file it.  The prior extension requests indicate the need for time to answer the questionnaire.

TKT/TKS's EOT Request.

Plaintiffs received an automatic extension until 8:30 am on the next work day, September 16th.  See Decision Memorandum at 15.

In an effort to buttress Plaintiffs' extension request, Counsel, on September 17th, provided Commerce with an "illustrative" example of the technical/computer problems it experienced in the form of two emails from access@trade.gov, one sent at 3:46 pm on September 15th, and the other sent at 7:02 am on September 16th, indicating that the documents that Counsel had attempted to file were rejected because of problems with embedded hyperlinks.  See TKT/TKS's EOT Request; Request for Reconsideration; TKT/TKS's Comments on Filing Issues, PR 224 (Sept. 17, 2020).  Counsel further explained that it faced other technical/computer issues, including corrupted files and difficulty in converting Russian language documents into searchable PDF format that were not resolvable by the 5:00 pm deadline on September 15th.  See Request for Reconsideration.

After considering Plaintiffs' extension request, including Counsel's supplemental submissions, Commerce concluded that Plaintiffs' filings "failed to meet the requirements of 19 CFR § 351.303, which stipulate[s] that the submission must be filed **in its entirety** by 5:00 p.m. on the due date specified or … [pursuant to the Final Rule], by 8:30 a.m. on the following work day," and rejected TKT/TKS's September 16th submission as untimely.  See First Rejection Letter ("In accordance with 19 C.F.R. 351.303(b)(1), an electronically filed document must be received successfully in its entirety …."). Commerce reasoned that it had been "unable to respond to [TKT/TKS's] request" for an

extension and that TKT/TKS had not filed its response "<u>in its entirety</u>"[9] as required by the regulation before the automatic extension deadline of 8:30 am on the next work day pursuant to the <u>Final Rule</u>.  <u>Id.</u>

Commerce further explained that the <u>Final Rule</u> emphasized "the need for extension requests to be submitted before the last minute," and that the exception set forth in the <u>Final Rule</u> would not "excuse the untimely filing of a submission for which Commerce received a last-minute extension request which [Commerce] did not have time to evaluate."  <u>Decision Memorandum</u> at 18.  Commerce also advised TKT/TKS that Commerce would neither consider nor retain a copy of Plaintiffs' Response in accordance with 19 C.F.R. § 351.104(a)(2)(iii).  <u>See id.</u>  In rejecting Plaintiffs' submission, it is reasonably discernible that Commerce denied Plaintiffs' extension request for lack of "good cause."  <u>See id.</u> at 21 (noting that "Commerce's rejection of TKS/TKT's response from the record and the explanatory letters issued to TKS/TKT explaining this action represent a clear and direct response to TKS/TKT's September 15, 2020, extension request.")

Counsel's subsequent request for reconsideration explained the work done to file Plaintiffs' response to the First Supplemental Questionnaire, including specifically addressing the problem with "missing" parts of certain BPI exhibits (actually one computer file) for which a public version was submitted.  Counsel stated that one file, a TKS BPI file, was inadvertently uploaded twice instead of the relevant TKT BPI file, noting

---

[9] In particular, Commerce noted that Plaintiffs had failed to file the business proprietary versions of certain exhibits before the deadline.

that Commerce "remedies such situations by requesting the BPI version via a supplemental questionnaire." <u>See</u> Request for Reconsideration.  Plaintiffs' Request for Reconsideration (and the case for acceptance of Plaintiffs' Response) was supplemented in two conference calls between Counsel and Commerce. <u>See</u> <u>Decision Memorandum</u> at 53 ("In October, we twice held meetings or conference calls with TKS/TKT's counsel to discuss its rejected submissions, as well as TKS/TKT's request that Commerce terminate the investigation, first with the Director of the office handling this investigation, and then with the Assistant Secretary of Enforcement & Compliance.").

Commerce thereafter denied Plaintiffs' request for reconsideration and reaffirmed its denial of Plaintiffs' extension request and rejection of Plaintiffs' Response as untimely. <u>See</u> Second Rejection Letter; <u>see also</u> <u>Decision Memorandum</u> at 21.  In so doing, Commerce addressed Plaintiffs' difficulty in responding because of "'extremely tight deadlines.'"  Second Rejection Letter (quoting Request for Reconsideration).  Commerce commented that:

> TKT was aware that it need not wait until deadlines were extremely tight to request an extension.  TKT had twice previously requested extensions for submitting its questionnaire response during this investigation, the first time on August 25, 2020, six days before the actual due date, and then later on September 9, 2020, one full day before the extended due date.  In both instances, TKT cited difficulties in assembling its response due to personnel issues and Covid-19, and Commerce was able to accommodate TKT's requests by providing additional time.  With respect to the latter request, while Commerce provided an extension on the same day as the request, we note that the request was made

> early in the morning, not one hour prior to the close of business.

Id. at 2.  Additionally, Commerce rejected TKT/TKS's characterization of the Final Rule "as a pre-COVID-19 relic."  Id.  Commerce highlighted that "[t]o the extent that Commerce chooses to modify its rules and procedures to accommodate the pandemic, it is capable of doing so."  Id. (citing, e.g., Temporary Rule Modifying AD/CVD Service Requirements Due to COVID-19; Extension of Effective Period, 85 Fed. Reg. 41,363 (July 20, 2020)).  However, Commerce did not modify the requirements for an extension of time in the Final Rule, nor indicate that those requirements were no longer in effect because of COVID.  Id.

Commerce re-emphasized many of these same considerations in the Final Determination.  Commerce specifically noted that Counsel was well aware of the 8:30 am deadline on September 16th as evidenced by the fact that "it began submission of its supplemental questionnaire response at 5:31 am [that morning], and continued filing its submission through 10:10 am …."  Decision Memorandum at 15.  Commerce stated that despite Plaintiffs' numerous "difficulties," "the fact remains that [TKT/TKS] was represented by experienced counsel, and Commerce had already granted multiple extensions as a result of these issues."  Id. at 16.  Commerce explained that TKT/TKS made "the minimum effort to ensure that Commerce had notice of [Counsel's] ongoing computer/technical issues," highlighting that Counsel "did not attempt to contact either the official in charge of the investigation or the ACCESS help desk before the close of business" on September 15th.  Id. at 16–17.  Commerce also explained that

if "difficulties" prevented an electronic filing by the deadline—which may have been the situation in this proceeding—Plaintiffs were required, pursuant to the instructions in the Initial Questionnaire, to contact Commerce officials and "submit a full written explanation of the reasons {the recipient is} unable to file the document electronically." Id. at 17.   The inference here is that Plaintiffs' 5-line barebones extension request, see supra at fn. 8, did not satisfy the requirement for "a full written explanation."

As to "missing" parts of Plaintiffs' exhibits, Commerce clarified that "the absence of portions of the BPI submission only supplemented the fact that the submission was not filed in its entirety prior to the stated 5:00 p.m. deadline or the 8:30 a.m. deadline provided for in the Final Rule."  Decision Memorandum at 21.  As Commerce explained:

> To be clear, our highlighting of [TKT/TKS's] deficient response had as much to do with the untimeliness of the accompanying public version than any documents missing from the BPI version of the submission.   Moreover, in the Preliminary Determination, we did not rely on [TKT/TKS's] failure to provide a full version of the submission as a reason for its rejection; in fact, we did not reference it at all.  We stated only that '[TKT/TKS's] failure to provide the requested information in a timely manner means that the necessary information is not available on the record, and [TKT/TKS] has significantly impede this proceeding.'

Id.

## C. Application of the Final Rule

TKT/TKS contend that its submission was timely despite completing the electronic submission at 10:11 am, one hour and 41 minutes after the rollover 8:30 am deadline. Pls.' Br. at 7–25.  Plaintiffs argue that, because the extension request was filed prior to the 5:00 pm deadline on September 15th, the request was timely under the Final Rule, and

as a consequence, Commerce was required to accept the response, even though not submitted in its entirety until after the passage of the 8:30 am deadline on September 16th.  See Pls.' Br. at 4–9.  In particular, Plaintiffs maintain that "Commerce should have considered and accepted [Plaintiffs' supplemental] questionnaire response" because TKT/TKS "filed the extension request before the deadline and then filed the response before the [end of the] requested" deadline of 5:00 pm on September 16th. Id. at 15.

The timeliness of TKT/TKS's extension request does not dictate Commerce's decision on it.  The Final Rule makes clear that:

> Parties should be aware that the likelihood of the Department granting an extension will decrease the closer the extension request is filed to the applicable time limit because the Department must have time to consider the extension request and decide on its disposition.  Parties should not assume that they will receive an extension of a time limit if they have not received a response from the Department. For submissions that are due at 5:00 p.m., if the Department is not able to notify the party requesting the extension of the disposition of the request by 5:00 p.m., then the submission would be due by the opening of business (8:30 a.m.) on the next work day.

Final Rule, 78 Fed. Reg. at 57,792.

TKT/TKS nevertheless argue that one of the purposes behind the Final Rule supports its position, namely that "Commerce will not adopt rules that are 'inflexible to permit' Commerce 'to effectively and fairly administer the AD and CVD laws.'"  Pls.' Br. at 8 (quoting Modification of Regulation Regarding the Extension of Time Limits, 78 Fed. Reg. 3,367, 3,370 (Jan. 16, 2013)).  Plaintiffs misapprehend Commerce's rationale for the

<u>Final Rule</u>.  As Commerce explained, the objective of the modification was "to clarify" that parties may request an extension of time before the expiration of any time limit provided for in Part 351, not just the time limits for submissions made under 19 C.F.R. § 351.301.  78 Fed. Reg. at 3,368; 78 Fed. Reg. at 57,791.  It also sets forth the "specific circumstances under which [Commerce] will consider an untimely-filed extension request."  78 Fed. Reg. at 3,368; 78 Fed. Reg. at 57,791.  Commerce further explained that it was making the modification to address last-minute extension requests that "often resulted in confusion among parties, difficulties in [Commerce's] organization of its work, and undue expenditures of …resources, which impede … [Commerce's] ability to conduct AD and CVD proceedings in a timely and orderly manner."  78 Fed. Reg. at 57,791.  The language relied upon by TKT/TKS does not accurately characterize those objectives.[10]

TKT/TKS had ample notice of the consequences of failing to timely file.  The Initial Questionnaire issued to TKT/TKS clearly stated that "Commerce will not accept any requested information submitted after the established deadlines."  <u>See</u> Commerce's Letter, "Countervailing Duty Investigation of Silicon Metal from the Republic of Kazakhstan:  Supplemental Questionnaire," PR 33 at 1; Commerce's Letter, "Investigation of Silicon Metal from the Republic of Kazakhstan: Countervailing Duty

---

[10] It appears that Plaintiffs have taken the quoted material out of context.  That material is found in a section of the initial Federal Register notice entitled <u>Description of Any Significant Alternatives to the Proposed Rule That Accomplish the Stated Objectives of Applicable Statutes and That Minimize any Significant Economic Impact of the Proposed Rule on Small Entities</u>, and reflects Commerce's rejection of an alternative proposal regarding untimely extension requests in favor of the language ultimately adopted in the <u>Final Rule</u>.

Questionnaire," PR 27 at 3.   The <u>Final Rule</u> also put TKT/TKS and Counsel on notice of the decreasing likelihood of receiving an extension of time the closer the extension request was to the deadline.   <u>See</u> <u>Final Rule</u>, 78 Fed. Reg. at 57,792 ("Parties should not assume that they will receive an extension of a time limit if they have not received a response from the Department.").   In the absence of a response from Commerce, Counsel knew or should have known that it had an "automatic extension" until 8:30 am on the next work day in accordance with the <u>Final Rule</u>.   <u>See</u> <u>id.</u>

        At the core of the parties' dispute are differing interpretations of <u>Dongtai Peak Honey Indus. v. United States</u>, 777 F.3d 1343 (Fed. Cir. 2015) ("<u>Dongtai Peak</u>"), which involved an untimely extension request along with the recitation of technical difficulties and the fact that respondent's counsel represented an overseas client.   <u>Dongtai Peak</u>, 777 F.3d at 1351–52.   The main question there was what prevented the respondent from filing an extension request earlier.   <u>Id.</u> (emphasizing that "all of the causes of delay noted in the April 19 Letter were known to Appellant prior to the April 17th deadline, and did not prevent the company from filing an extension request before that date").

        Here, similarly, it is unclear why Plaintiffs did not file an extension request earlier. Despite receiving the completed response from Plaintiffs at 10:58 am on September 15th (roughly six hours before the 5:00 pm deadline), Counsel nevertheless did not request an extension of time, concluding instead that it would be possible to complete submission of the response to Commerce by the 5:00 pm deadline.   <u>See</u> <u>Decision Memorandum</u> at 16, 19 ("Nonetheless, on the final due date for the questionnaire response, TKS/TKT failed to submit a similarly-early additional extension request, concluding on its own

that just over six hours was enough time for its counsel to receive and submit the documents via ACCESS.").  While Counsel emphasized difficulties in communicating with Plaintiffs, noting "the inexperience of [Plaintiffs'] personnel in responding to such questionnaires, and issues related to COVID-19," none of that excused TKT/TKS from making a timely filing of Plaintiffs' response to the initial supplemental questionnaire. As Commerce noted, "these factors did not prevent TKS/TKT from filing previous additional extension requests early enough for Commerce to respond."  <u>Decision Memorandum</u> at 19.   Commerce concluded that, given the circumstances in the underlying proceeding, the decision by Counsel to attempt to file Plaintiffs' response in its entirety without earlier requesting an additional extension of time constituted an unwise gamble that did not justify granting the subsequent last-minute request.  <u>Id.</u>

TKT/TKS contend that Commerce's rejection of Plaintiffs' Response was an abuse of discretion akin to that found in <u>Artisan Mfg. Corp. v. United States</u>, 38 CIT ___, 978 F. Supp. 2d 1334 (2014) (holding that Commerce abused discretion in rejecting questionnaire response filing submitted less than 24 hours after deadline where "[s]uch a brief period could not have delayed the investigation in any meaningful way").  <u>See</u> Pls.' Br. at 20–22.   Commerce found TKT/TKS's reliance on <u>Artisan</u> to be misplaced, emphasizing that <u>Artisan</u> predated both the <u>Final Rule</u>, which specifically clarifies Commerce's policy regarding extension requests, as well as guidance from the U.S. Court of Appeals for the Federal Circuit in <u>Dongtai Peak</u>.  <u>See</u> <u>Decision Memorandum</u> at 18–21.

TKT/TKS also argue that Commerce "made no effort to meet its statutory mandate to calculate accurately the subsidy margin."  <u>See</u> Pls.' Br. at 9; <u>id.</u> at 19–20 (maintaining

that Commerce failed to balance the interests of "accuracy and fairness" against the "interest in finality").  Defendant argues to the contrary that Commerce did not abuse its discretion in prioritizing the need for finality over Commerce's obligation to determine the most accurate CVD margin.  <u>See</u> Def.'s Resp. at 13 (citing <u>Bebitz Flanges Works Private Ltd. v. United States</u>, 44 CIT ___, ___, 433 F. Supp. 3d 1297, 1305 (2020) ("<u>Bebitz CVD</u>")).  In <u>Bebitz CVD</u>, the respondent filed a fourth extension request 20 minutes before the 5:00 pm deadline.  <u>See</u> 44 CIT at ___, 433 F. Supp. 3d at 1302. Commerce did not respond by 5:00 pm, so the filing deadline automatically rolled over to 8:30 am the next work day.  <u>Id.</u>  The Bebitz CVD plaintiff-respondent missed the 8:30 am deadline the following day and instead filed its response at 10:24 am.  <u>See</u> <u>id.</u> The <u>Bebitz CVD</u> court was not persuaded that Commerce unreasonably denied the extension request and that Bebitz's untimely filing must be accepted, emphasizing that it is not for the respondent "to establish Commerce's deadlines or dictate to Commerce whether and when Commerce actually needs the requested information." <u>Id.</u>  44 CIT at ___, 433 F. Supp. 3d at 1305 (citing <u>Dongtai Peak</u>, 777 F.3d at 1352). The court explained that the applicable regulation, § 351.302(b), provides Commerce with discretion on "whether to grant or deny an extension request," and that the plaintiff-respondent failed to demonstrate that Commerce abused its discretion.  <u>See</u> <u>id.</u> 44 CIT at ___, 433 F. Supp. 2d at 1305–06.  The circumstances here are parallel to those in <u>Bebitz CVD</u>, and the court sees no reason to differ in the outcome, particularly in light of the multiple extensions already granted to TKT/TKS.[11]

---

[11] The court notes that Counsel here also represented plaintiff-respondent in <u>Bebitz CVD</u>.

A court "cannot set aside application of a proper administrative procedure because it believes that properly excluded evidence would yield a more accurate result if the evidence were considered." PSC VSMPO, 688 F.3d at 761. The Statement of Administrative Action ("SAA") accompanying the Uruguay Round Agreements Act explains that the purpose of the adverse facts available provision is "to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." SAA, H.R. Doc. No. 103-316, 870, reprinted in 1994 U.S.C.C.A.N. 4040, 4199 (1994). Congress "intended for an adverse facts available rate to be a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance." F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000). Commerce reasonably determined that, under the facts of this case, Plaintiffs failed to act to the best of their ability and that the use of facts available with an adverse inference was warranted.

The record demonstrates that TKT/TKS did not put forth a maximum effort to provide Commerce with the requested information by the deadline, that Plaintiffs did not follow instructions in the Initial Questionnaire to contact Commerce officials in case of difficulty filing a submission, nor did Plaintiffs file a response by 8:30 am the following work day pursuant to the Final Rule. Counsel's explanation here is vague and conclusory.[12] Counsel submitted no affidavits from its staff or Plaintiffs detailing

---

[12] See, e.g., TKT/TKS's EOT Request ("They have worked flat out to get this done. We have now received full response but are some technical/computer issues to resolve to file it. The prior extension requests indicate the need for time to answer the questionnaire."); TKT/TKS's Comments on Filing Issues ("as to our September 15, 2017 (footnote continued)

the technical or other difficulties experienced or the efforts undertaken in "preparing" TKT/TKS's documents for filing with ACCESS or attempts to reach Commerce.

The court agrees with Commerce that Plaintiffs' reliance on Artisan is misplaced. Plaintiffs offer little to support their position, other than asserting that Dongtai Peak and Bebitz CVD run contrary to Commerce's determination.   Given that Plaintiffs fail to develop how Commerce abused its discretion here, see Pls.' Reply at 5, the court finds that Plaintiffs' argument on this point is meritless.   Accordingly, the court cannot agree with Plaintiffs that Commerce's decisions to deny the September 15th extension request and reject Plaintiffs' Response constituted an abuse of discretion.

### D. Due Process Claim

Plaintiffs also argue that, under Dongtai Peak, "TKT's due process rights were violated by Commerce rejecting TKT's extension request for doing exactly as Commerce told TKT to do."  Pls.' Br. at 16 (emphasizing that "(a) TKT filed its extension request before the deadline and in writing (in ACCESS), doing exactly as Commerce instructed; and (b) Commerce had not informed TKT to do otherwise than exactly what TKT did."). The court does not agree.   The Court of Appeals held that "Commerce's rejection of untimely-filed factual information does not violate a respondent's due process rights when the respondent had notice of the deadline and an opportunity to reply." Dongtai Peak, 777 F.3d at 1353; see also PSC VSMPO–Avisma Corp. v. United States,

---

extension request to answer the subsidy questionnaire (which we did in three parts), attached illustrates technical filing issues that we were facing as to the huge filing and continuing to deal with.") TKT Request to Terminate Investigation, PR 240 (Oct. 2, 2020) ("Petitioner claims, loudly made, consumed many, many multiples of the 1.5 hours of all concerned in the TKT questionnaire response process."); Request for Reconsideration.

688 F.3d 751, 761–62 (Fed. Cir. 2012) (respondent had opportunity to put forth evidence supporting proposed accounting methodology but failed to do so, and therefore respondent was not deprived of due process).  TKT/TKS knew the deadline, and that the deadline was previously extended—not once, but three times—and failed to respond accordingly.  See Decision Memorandum at 19 ("As the CAFC noted in Dongtai Peak with respect to the need for fairness and accuracy, Commerce's rejection of an untimely-filed questionnaire response does not violate any due process rights of a respondent such as TKS/TKT, because the respondent had notice of the deadline and the opportunity to respond to the Initial Questionnaire in a timely manner, or file an earlier request for an extension.   The Initial Questionnaire emphasized the importance of submitting the response in a timely manner and highlighted that the consequences for failing to do so might result in the application of AFA.   As such, TKS/TKT was afforded notice regarding the consequences of its decisions."  (footnotes omitted)).

### E. Time to Complete Investigation

TKT/TKS nonetheless contends that its extension request provided sufficient time for Commerce to recognize that a filing was made, consider the request through proper channels, and draft, file, and put on the record a disposition prior to 5:00 pm.  Pls.' Br. at 15–16, 22–25.  Plaintiffs specifically argue that granting counsel's one-day extension request would not have hindered Commerce's investigation because there was still some time before Commerce's next deadline.  Id. at 9–10, 18.  Additionally, Plaintiffs maintain that Commerce "violate[d] its own precedent" because it has, in the past, granted extension requests later than TKT/TKS's 3:50 pm request.  Id.  Defendant maintains

that Commerce does not "automatically" grant extension requests.  Def.'s Resp. at 7

(citing 19 C.F.R. § 351.302(b)).  While Commerce has discretion in enforcing time limits,

that discretion is not unbounded.  See SKF USA Inc. v. United States, 263 F.3d 1369,

1382 (Fed. Cir. 2001) ("an agency action is arbitrary when the agency offers insufficient

reasons for treating similar situations differently"); see also Cerro Flow Prod., LLC v.

United States, 38 CIT ___, ___, 2014 WL 3539386 at *6 (2014) ("Commerce must treat

similarly situated parties consistently").  Furthermore, "[s]trict enforcement of time limits

and other requirements is neither arbitrary nor an abuse of discretion when Commerce

provides a reasoned explanation for its decision."  Maverick Tube Corp. v. United States,

39 CIT ___, ___, 107 F. Supp. 3d 1318, 1331 (2015).  Here, Commerce has provided

such reasons, and the denial of Plaintiffs' extension request and the rejection of Plaintiffs'

incomplete and untimely submission were within Commerce's discretion.

Plaintiffs highlight that Commerce has granted extension of time requests,

even certain untimely requests, in numerous circumstances.  See Pls.' Br. at 22–24

(listing examples of Commerce granting extension of time requests including

in Ripe Olives from Spain, C-469-818 (Dep't of Commerce Apr. 30, 2020) ("Ripe Olives")).

Plaintiffs' argument, however, ignores any factual distinctions between those prior

proceedings and the underlying investigation.  For instance, in Ripe Olives, the submitting

party had already uploaded most of its submission, experienced technical issues with one

attachment, had promptly contacted Commerce personnel about the problem, and,

importantly, was able to file before 8:30 am the next work day.  See id.; see also Bebitz

Flanges Works Private Ltd. v. United States, 44 CIT ___, ___, 433 F. Supp. 3d 1309,

1324 n.6 (2020) (explaining that various cases "in which the court rejected Commerce's use of its discretion in connection with rejecting information from respondents," also cited by Plaintiffs here, were inapposite).   Plaintiffs would like the court to conclude that Ripe Olives and other prior proceedings where Commerce granted extension of time requests stand for the proposition that because Commerce "can" grant an extension in certain scenarios, it "must" grant them in others, and that the timing of the filing is the only dispositive factor.   See Pls.' Br. at 22–25.   Plaintiffs provide no authority for its position.   Accordingly, the court finds Plaintiffs' arguments relying on Commerce's granting of extension requests in other proceedings unpersuasive.   In fact, the only conclusion that can be drawn from Commerce's prior determinations is that Commerce has an administrative "practice" to treat extensions on a case-by-case basis.

### F. Conflict-of-Interest Claim

Plaintiffs next challenge Commerce's determination that a conflict-of-interest claim raised by Petitioners during the underlying proceeding did not interfere with Counsel's ability to submit Plaintiffs' response to the First Supplemental Questionnaire via ACCESS. Pls.' Br. at 26–32.   Plaintiffs maintain that Counsel submitted a letter including two decisions of Commerce plus a copy of a transcript before the U.S. International Trade Commission ("ITC") involving the same petitioners as here in support of its interference argument.   See TKT/TKS's Letter Re: Hearings & Decisions, PR 257 (Oct. 28, 2020). Plaintiffs argue that the ITC transcript is evidence of bad faith on the part of Petitioners regarding Counsel's alleged conflict-of-interest, which claim was meant to distract Plaintiffs from filing a timely response with Commerce.   See Pls.' Br. at 26–32.

Court No. 21-00173                                                              Page 26

On September 8th, Petitioners (which included Mississippi Silicon LLC) requested that Commerce disqualify and require the immediate withdrawal of Counsel because of a conflict-of-interest.  See Request to Disqualify, PR 45 (Sept. 8, 2020).  Petitioners alleged that a direct and ongoing conflict-of-interest existed because Counsel had previously represented Mississippi Silicon LLC in a 2017 investigation before the ITC, also involving silicon metal from Kazakhstan.  Id.  Ultimately, Commerce determined that no ongoing conflict-of-interest existed.  See Decision Memorandum at 27 (citing Disqualification Memorandum, PR 247 (Oct. 6, 2020)).

TKT/TKS argue that Mississippi Silicon's conflict-of-interest claim lacked "even colorable merit," and thus, Petitioners "necessarily had some other intent, where the only one possible intent seems to be a litigious one to disrupt TKT's ability to participate in the questionnaire process."  Pls.' Br. at 27–29.  Plaintiffs argue that Mississippi Silicon's actions, in raising the conflict-of-interest claim, succeeded in disrupting Counsel's ability to meet the September 15th deadline.  Id. at 30–32.

Regardless of the claim by Counsel as to the motive/intent of Petitioners, the issue here is whether substantial evidence on the record supports Commerce's determination. TKT/TKS placed no information on the record regarding an abuse of process by Petitioners.  Indeed, Commerce found "no evidence that petitioner's allegation of a conflict-of-interest interfered with the respondent's ability to respond … in a timely manner."  Decision Memorandum at 31.  In reaching its determination, Commerce explained that:

TKS/TKT did not reference any additional burden placed upon it by the petitioners' submission of the previous day, nor any uncertainty regarding the role of counsel vis-à-vis TKS/TKT. Nor did TKS/TKT claim that the petitioners' submission had any deleterious effect on its ability to timely submit its response to the Initial Questionnaire on the revised due date, September 15, 2020. Further, following Commerce's rejection of TKS/TKT's initial questionnaire response as untimely, TKS/TKT similarly failed to argue that the petitioners interfered in its response preparation process as part of its October 2, 2020, reconsideration request. In that letter, TKS/TKT merely notes that its counsel only received the complete questionnaire response at 10:58 a.m. on the date the submission was due. Thus, the record does not support TKS/TKT's contentions.

Id. at 32 (footnotes omitted). Given the record and Commerce's explanation, Plaintiffs' argument lacks merit.

### G. Application of Adverse Facts Available

#### 1. Framework

In an investigation or review, "the burden of creating an adequate record lies with interested parties." QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011). If Commerce determines that "necessary information is not available on the record" or "an interested party or any other person … withholds information that has been requested" by Commerce," "fails to provide such information by the deadlines … or in the form and manner requested," "significantly impedes a proceeding," or "provides such information but the information cannot be verified," then Commerce is permitted to use "facts otherwise available" in making its determinations. 19 U.S.C. § 1677e(a); see 19 C.F.R. § 351.308 (providing for "[d]eterminations on the basis of the facts available"). The purpose of "facts otherwise available" is to fill "gaps" in the

administrative record.   Nippon Steel Corp. v. United States, 337 F.3d 1373, 1381

(Fed. Cir. 2003) ("Nippon Steel II").

Additionally, "if an interested party 'fail[s] to cooperate by not acting to the best of

its ability to comply with a request for information,' then Commerce 'may use an inference

that is adverse to the interests of that party in selecting from among the facts otherwise

available,' commonly referred to as AFA."   Deacero S.A.P.I. de C.V. v. United States,

996 F.3d 1283, 1295–96 (Fed. Cir. 2021) (quoting 19 U.S.C. § 1677e(b)); see 19 C.F.R.

§ 351.308 (similar).

## 2. Information Gap

Commerce's rejection of Plaintiffs' Response resulted in eliminating from the

record the entirety of that response on affiliation.  See supra.  As a result, there was a gap

of  necessary  information  in  the  record  of  the  underlying  proceeding.    Given  the

circumstances presented, Commerce found that necessary information was not on the

record, and as a consequence, resorted to facts available pursuant to 19 U.S.C. § 1677e.

See Decision Memorandum at 15–21, 25.  Commerce determined that:

> TKS/TKT did not put forth the "maximum effort" required of it.
> TKS/TKT retained and was represented by experienced trade
> counsel throughout the entirety of this proceeding, and,
> therefore, had the ability to understand Commerce's requests
> for information at the time such requests were issued.
> In addition, it was TKS/TKT's responsibility to provide
> complete and accurate information to Commerce so that
> we could analyze and determine the amount of any benefits
> received under the programs being investigated.  The "failure
> to provide information" in a timely manner lies with TKS/TKT.
> As the CAFC held in Maverick Tube, [857 F.3d 1353, 1360–61
> (Fed. Cir. 2017),] it is the responsibility of Commerce, and not
> the responsibility of a respondent, to analyze and determine

> if a benefit exists, and if it does, to determine the amount of benefit received.  Moreover, given TKS/TKT's retention of experience counsel, TKS/TKT's inability to comply with the instructions in the Initial Questionnaire to contact Commerce officials in case of difficulty filing a submission, to file an extension request early enough to consider it, or to file a complete response by 8:30 a.m. the following business day in accordance with the Final Rule is inexplicable, and evidence of the respondent's failure to act to the best of its ability.

Id. at 26–27 (footnote omitted).

### 3. Adverse Inference

Plaintiffs do not challenge Commerce's decision to resort to facts available, only Commerce's decision to use an adverse inference in its selection of facts available. See Pls.' Br. at 33–34.  TKT/TKS argue that, given the circumstances of this proceeding, an adverse inference may not be drawn from failing to provide a questionnaire response, and that "more is required."  See Pls.' Br. at 33 (relying on Nippon Steel Corp. v. United States, 34 CIT ___, ___, 118 F. Supp. 2d 1366, 1377 (2000) ("Nippon Steel I"). The problem for Plaintiffs here is that they seem to misapprehend the applicable precedent regarding facts available.  To avoid AFA, interested parties must "do the maximum [they are] able to do."  Nippon Steel II, 337 F.3d at 1382.  This standard "does not require perfection and recognizes that mistakes sometimes occur," but "it does not condone inattentiveness, carelessness, or inadequate record keeping."  Id. In reversing Nippon Steel I, the Court of Appeals noted that:

> Compliance with the 'best of its ability' standard is determined by assessing whether respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation.  While the standard does

> not require perfection and recognizes that mistakes sometimes occur, it does not condone inattentiveness [or] carelessness …

Nippon Steel II, 337 F.3d at 1382.  The Court also explained that "[w]hile intentional conduct, such as deliberate concealment or inaccurate reporting," may show "a failure to cooperate, the statute does not contain an intent element."  Id. at 1383.

Plaintiffs also argue that Commerce should not "impose adverse inferences on a respondent company for the actions of its government."  Pls.' Br. at 34 (citing Clearon Corp. v. United States, 44 CIT ___, ___, 474 F. Supp. 3d 1339, 1343–44 (2020); Guizhou Tyre Co. v. United States, 43 CIT ___, ___, 415 F. Supp. 3d 1402, 1403 (2019)). Again, TKT/TKS's reliance on these decisions is misplaced.  In those matters, it was the respective governmental entity that did not cooperate or withheld requested information, not the private party respondents.  The non-cooperation in both cases complicated the examination of the particular subsidy program in issue, one that was outside the purview of the underlying investigation.  Furthermore, the focus of those actions was on indicia in the record that the cooperating respondents did not use the program, as well as Commerce's inadequate explanation of why it could not verify that fact despite the foreign government's failure to provide the requested information.  See Clearon, 44 CIT at ___, 474 F. Supp. 3d at 1349–54; Guizhou Tyre, 43 CIT at ___, 415 F. Supp. 3d at 1403–05.

Here, it was the private party respondent, not the government, that failed to provide necessary information "by the deadlines … or in the form and manner requested," 19 U.S.C. § 1677e(a).  Commerce explained that its CVD analysis requires certain

information, part from the foreign government relating to the contribution and specificity aspects of that analysis, and part from the private party respondents that produce and/or export the goods in question, including whether a benefit was received.  See Decision Memorandum at 46.  That information was not filed in its entirety by Plaintiffs. Accordingly, the court cannot agree with Plaintiffs that Commerce improperly "impose[d] adverse inferences on a respondent company for the actions of its government." See Pls.' Br. at 34.

Plaintiffs also argue since there is "only one Kazakh silicon metal producer" that fact somehow implies that an adverse inference cannot be applied.  See Pls.' Br. at 34.  TKT/TKS provides no authority for this proposition; nevertheless, Plaintiffs suggest that the imposition of AFA on TKT/TKS collaterally affects the Government of Kazakhstan's willingness to cooperate in the future because the Government of Kazakhstan has no incentive to participate if the end result is AFA regardless of its cooperation.   Pls.' Reply at 7–8.   That policy argument fails to demonstrate how Commerce's determination was unsupported by substantial evidence.  Therefore, Commerce's determination to apply adverse inferences was reasonable.

Court No. 21-00173                                                              Page 32

### III. Conclusion

For the above reasons, TKT/TKS's motion for judgment on the agency record is denied.  Judgment will be entered accordingly.


         /s/ Leo M. Gordon      
         Judge Leo M. Gordon


Dated: July 14, 2022
     New York, New York