Slip Op. 22-121

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **AJMAL STEEL TUBES & PIPES INDUSTRIES LLC,** | |
| Plaintiff, | |
| v. | Before: Jane A. Restani, Judge |
| **UNITED STATES,** | Court No. 21-00587 |
| Defendant, | |
| **WHEATLAND TUBE COMPANY,** | |
| Defendant-Intervenor | |

OPINION AND ORDER

Dated: October 28, 2022

[Commerce's final determination in the 2018–2019 administrative review of the antidumping order on circular welded carbon-quality steel pipe from the United Arab Emirates is remanded for reconsideration consistent with this opinion.]

David G. Forgue, Barnes, Richardson, & Colburn, LLP, of Chicago, IL, argued for Plaintiff Ajmal Steel Tubes & Pipes Industries LLC.

Kelly M. Geddes, Commercial Litigation Branch, U.S. Department of Justice, of Washington, DC, argued for Defendant United States of America. With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, U.S. Department of Justice, of Washington, DC. Of counsel on the brief was Vania Y. Wang, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

Luke A. Meisner, Schagrin Associates, of Washington, DC, argued for Defendant-Intervenor Wheatland Tube Company. With him on the brief were Roger B. Schagrin and Kelsey M. Rule.

Restani, Judge:  This action is a challenge to the final determination made by the United States Department of Commerce ("Commerce") in the periodic review of the antidumping ("AD") order for carbon-quality pipe from the United Arab Emirates ("UAE") covering the period from December 1, 2018, through November 30, 2019.

Plaintiff requests that the court hold aspects of Commerce's final determination unsupported by substantial evidence or otherwise not in accordance with law.  The United States ("Government") asks that the court sustain Commerce's final determination.

## BACKGROUND

Ajmal Steel Tubes & Pipes Ind. LLC ("Ajmal") is a producer of carbon-quality pipe from the UAE.  Pl. Br. at 4.  Since 2016, this product has been subject to an AD order.  See Circular Welded Carbon-Quality Steel Pipe from the Sultanate of Oman, Pakistan, and the United Arab Emirates: Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Orders, 81 Fed. Reg. 91906 (Dec. 19, 2016).  On March 3, 2020, Commerce selected Ajmal and Universal Tube and Plastic Industries, Ltd. ("Universal") as mandatory respondents for an administrative review of the antidumping order and issued questionnaires with the Section A responses due March 24, 2020.  Respondent Selection for the Antidumping Duty Review of Circular Welded Carbon-Quality Steel Pipe from the United Arab Emirates at 1, P.R. 26 (Mar. 3, 2020); see also Def. Br. at 2.  Subsequently, Ajmal submitted an extension of time request ("EOT") on March 19, 2020, and another EOT on April 3, 2020, for delays "due to the COVID-19 global pandemic."  Ajmal March 19, 2020, Section A Extension Request at 1, P.R. 33 (Mar. 19, 2020); Ajmal April 3, 2020, Section A–D Extension Request at 2, P.R. 39 (Apr. 3, 2020).  Ajmal submitted each of these EOTs several days prior to its respective filing deadlines and Commerce

granted both requests, setting a due date of April 14, 2020. See id.; see also USDOC April 3, 2020, Extension Request Approval at 1, P.R. 40 (Apr. 3, 2020).

 On April 14, 2020, Universal submitted its Section A filing in a timely manner. Universal Section A Response at 1, P.R. 41 (Apr. 14, 2020). Ajmal, however, failed to submit any documents before the 5:00 PM deadline, submitting an untimely EOT at 6:10 PM and the complete Section A filing at 6:42 PM. Ajmal April 14, 2020, Section A Extension Request, P.R. 48 (Apr. 14, 2020) ("April 14, 2020, EOT"); see also Def. Br. at 4. Commerce denied the untimely EOT on April 16, 2020, USDOC April 16, 2020, Extension Request Denial at 3, P.R. 49 (Apr. 16, 2020) ("First Denial"), thereby rejecting the Section A filing and not considering it as a part of the official record. Ajmal submitted a request to reconsider the decision on April 19, 2020. Ajmal April 19, 2020, Request to Reconsider the April 16, 2020, EOT Denial, P.R. 50 (Apr. 19, 2020) ("First Request to Reconsider"). Commerce denied Ajmal's First Request to Reconsider on May 7, 2020, USDOC May 7, 2020, Extension Request Denial at 3, P.R. 52 (May 7, 2020) ("Second Denial"), and Ajmal submitted a second request to reconsider on May 13, 2020, Ajmal May 13, 2020, Request to Reconsider the April 16, 2020, EOT Denial at 1, P.R. 53 (May 13, 2020) ("Second Request to Reconsider"). Ajmal and Commerce discussed the denied EOT during a May 21, 2020, phone call, USDOC Ex Parte Phone Call Meeting Memo at 1, P.R. 57 (May 21, 2020), and a petitioner in the administrative review, Wheatland Tube Company ("Wheatland"), submitted a letter in opposition to granting the untimely EOT on June 3, 2020. Wheatland June 3, 2020, Letter in Opposition to Ajmal's EOT at 1, P.R. 58 (June 3, 2020) ("Wheatland Opposition Letter"). On July 6, 2020, Commerce denied Ajmal's Second Request to Reconsider, relying in part on

Court No. 21-00587                                                                                              Page 4

information contained in the letter from Wheatland. <u>USDOC July 6, 2020, Extension Request Denial</u> at 2, P.R. 72 (July 6, 2020) ("Third Denial").

Prior to the Second Denial, on April 24, 2020, Commerce tolled all deadlines in AD and countervailing duty ("CVD") investigations by 50 days, thereby extending the deadline for the Sections B, C, and D submissions from May 14, 2020, to July 2020. <u>See</u> <u>USDOC April 24, 2020, COVID-19 Tolling Memo</u> at 1, P.R. 51 (Apr. 24, 2020) ("First Tolling Memo"). Commerce's decision to toll all deadlines did not apply to deadlines that had already passed, therefore, Ajmal's untimely Section A filing still was considered untimely. <u>See</u> Third Denial at 3. On July 6, 2020, Ajmal filed its response to Sections B, C, and D in a timely manner. <u>Antidumping Duty Review of Circular Welded Carbon-Quality Steel Pipe from the United Arab Emirates: Section B-D Questionnaire Response</u> at 1 (July 6, 2020). Two weeks later, Commerce tolled all deadlines in administrative reviews by an additional 60 days. <u>USDOC July 21, 2020, COVID-19 Tolling Memo</u> at 1, P.R. 73 (July 21, 2020) ("Second Tolling Memo"). Commerce published its preliminary results on April 16, 2021, see <u>Circular Welded Carbon-Quality Steel Pipe from the United Arab Emirates</u>, 86 Fed. Reg. 21,688 (Dep't Commerce Apr. 23, 2021), along with the accompanying <u>Decision Memorandum for the Preliminary Results of the 2018-2019 Administrative Review of the Antidumping Duty Order on Circular Welded Carbon-Quality Steel Pipe from the United Arab Emirates</u>, A-520-807, POR 12/01/2018-11/30/2019 (Dep't Commerce Apr. 16, 2021) ("PDM"). Due to the gap in the record created by the untimely submission and subsequent rejection of Ajmal's Section A filing, Commerce applied facts otherwise available with an adverse inference ("AFA") pursuant to 19 U.S.C. § 1677e (2015) to Ajmal, and preliminarily

assigned the highest dumping rate in the petition, 54.27%, as Ajmal's new dumping rate. PDM at 11; see also Def. Br. at 6.

On July 30, 2021, Commerce issued a post-preliminary questionnaire to Universal, but did not issue any additional questionnaires to Ajmal as Commerce "based Ajmal's margin for the Preliminary Results on total AFA." Issues and Decision Memorandum for the Final Results of the 2018-2019 Administrative Review of the Antidumping Duty Order on Circular Welded Carbon-Quality Steel Pipe from the United Arab Emirates, A-520-807, POR: 12/1/2018-11/30/2019, at 2–3 (Dep't Commerce Oct. 20, 2021) ("IDM"). Commerce published its final determination on October 27, 2021, finalizing the application of AFA and the rate of 54.27% described in the preliminary results. Circular Welded Carbon-Quality Steel Pipe from the United Arab Emirates, 86 Fed. Reg. 59,364 (Dep't Commerce Oct. 27, 2021) ("Final Results"); see also IDM at 2–3. This rate of 54.27% is approximately 9 times higher than the highest rate Commerce had previously assigned Ajmal. Pl. Br. at 6. Ajmal raises challenges to the final determination, particularly the application of AFA.

## JURISDICTION & STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2020) and 19 U.S.C. § 1516a(a)(2)(B)(i) (2020). The court will uphold Commerce's determinations in an AD proceeding unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

Commerce will not consider or retain in the official record untimely filed factual information. 19 C.F.R. § 351.302(d) (2013). When Commerce rejects information or information

does not exist in the record, there may be a gap in the record requiring Commerce to use facts available and permitting it, in certain circumstances, to use AFA. See 19 U.S.C. § 1677e; see e.g., Tau-Ken Temir LLP v. United States, 46 CIT __, __, 587 F.Supp.3d 1346, 1362 (2022). Here, Commerce rooted its use of AFA in the gap created by the missing information theoretically contained in the rejected Section A filing. PDM at 10. A granted EOT would have remedied the default caused by the delay in the Section A filing, and presumably the resulting gap in information. Therefore, Commerce's use of AFA, as currently articulated, is predicated upon whether Commerce was reasonable in denying Ajmal's untimely EOT.

## I. Commerce's Denial of Ajmal's EOT

Ajmal primarily challenges Commerce's denial of Ajmal's untimely April 14, 2020, EOT on two grounds. First, Ajmal argues that "technical difficulties in work operations related to the newly emerging COVID-19 global pandemic are 'extraordinary circumstances' as contemplated under 19 C.F.R. § 351.302(c)(2)." Pl. Br. at 3. Second, Ajmal contends that the denial of the EOT was arbitrary and capricious, as Commerce subsequently tolled all administrative review deadlines as a result of "operational adjustments due to COVID-19." Id.; First Tolling Memo at 1.

Untimely EOTs are regulated by 19 C.F.R. § 351.302(c), which provides that "[a]n untimely filed extension request will not be considered unless the party demonstrates that an extraordinary circumstance exists." 19 C.F.R. § 351.302(c) (emphasis added). "An extraordinary circumstance is an unexpected event that: (i) Could not have been prevented if reasonable measures had been taken, and (ii) Precludes a party or its representative from timely filing an extension request through all reasonable means." Id. § 351.302(c)(2). The preamble accompanying the promulgation of this regulation listed examples of "extraordinary circumstances" such as "a

Court No. 21-00587                                                                                                Page 7

natural disaster, riot, war, force majeure, or medical emergency." See Extension of Time Limits, 78 Fed. Reg. 57,790, 57,793 (Dep't Commerce Sept. 20, 2013) ("Preamble"). Commerce further explained in the Preamble that circumstances of "insufficient resources, inattentiveness, or the inability of a party's representative to access the Internet on the day on which the submission was due," were unlikely to be considered extraordinary circumstances. Id.

Commerce's determination as to whether an extraordinary circumstance exists is evaluated under an abuse of discretion standard. See Tau-Ken Temir LLP, 46 CIT at __, 587 F.Supp.3d at 1352. "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." Consol. Bearings Co. v. United States, 412 F.3d 1266, 1268 (Fed. Cir. 2005) (citing Star Fruits S.N.C. v. United States, 393 F.3d 1277, 1281 (Fed. Cir. 2005)). The primary relevant factors are the circumstances that led to Ajmal's untimely EOT, and whether Commerce took appropriate steps to determine whether the COVID-19 pandemic constituted an extraordinary circumstance in April 2020.

**A. Ajmal's Circumstances**

In its April 14, 2020, EOT, Ajmal cited "the large size of the response" and "technical difficulties" as reasoning for granting the untimely EOT. April 14, 2020, EOT at 1. Ajmal further clarified that "[a]ll of our staff is working from home and from a laptop as a result of COVID-19" and that the "technical restraints from working from a laptop" had caused the delay. Id. After the denial of its untimely EOT by Commerce, Ajmal submitted the First Request to Reconsider and included a detailed breakdown of its efforts to timely file both the EOT and Section A response on April 14, 2020. First Request to Reconsider at 2–4. In the breakdown, Ajmal informed Commerce

that Ajmal's counsel, Barnes, Richardson, and Colburn, LLP ("BRC"), had not received the filing information from Ajmal's UAE office until 9:00 AM EDT on April 14, 2020, and that the task was primarily left to one paralegal who was later joined by one unbarred associate. See id. According to Ajmal and its counsel, a paralegal for BRC prepared the filing, however, the paralegal's laptop failed to process the task of splitting the filing as required for submission to ACCESS. See id. As the laptop was overwhelmed with the initial task, the paralegal was also unable to process an EOT prior to the 5:00 PM deadline. See id. After Commerce denied the request to reconsider, Ajmal submitted an even more detailed account, revealing that the partner supervising the matter, Mr. Matthew McGrath, and the paralegal discussed and decided not to call Commerce to inform the case manager of the delay "given the current remote environment." Second Request to Reconsider at 2.

The court has previously upheld decisions of Commerce to reject EOT requests that result in late filings and AFA, after the world had more time to adapt to the COVID-19 pandemic. For example, in Tau-Ken Temir, 46 CIT at __, 587 F. Supp. 3d at 1364, the court affirmed Commerce's decision to deny a timely EOT filed 70 minutes before a 5:00 PM deadline for submission. Respondents argued that counsel had not received the information necessary to file the submission until 10:58 AM the day it was due, and that they had experienced technical difficulties regarding hyperlinks in ACCESS. See id. at 1353–57. As the EOT had been filed prior to the submission deadline, Commerce utilized a more lenient "good cause" standard rather than the extraordinary circumstances standard applicable to Ajmal's EOT. Id. at 1351–52. The court nonetheless found Commerce was reasonable in rejecting the EOT as none of the factors presented by the respondent had prevented them from filing an EOT early enough for Commerce to timely process the EOT.

See id. at 1357–59. It is difficult to extrapolate from one circumstance to the next as the number of EOT's previously requested and Commerce's experience with counsel will differ and minor factual differences may be determinative.

Nonetheless, the circumstances Ajmal and its counsel BRC experienced on April 14, 2020, likely should not have prevented them from filing a timely EOT. BRC could have submitted a timely EOT when it had not yet received the necessary information the day before the submission deadline, or perhaps used the laptop of another staff member to prepare an EOT when the need became apparent. Ajmal asserts these shortcomings are a result of work changes caused by the COVID-19 pandemic. See Def. Br. at 7 (explaining the Section A response was the first "significant filing attempted by BRC personnel since commencing remote work operations."). In comparison, on April 14, 2020, both Commerce and Universal were conducting remote work operations, yet neither had requested nor yet ordered a significant extension to the administrative review deadlines because of that transition. Therefore, without the further context of how extraordinary the COVID-19 pandemic was in April 2020, and Commerce's later actions regarding the tolling of deadlines, Commerce likely would have been reasonable in denying Ajmal's EOT for a lack of an extraordinary circumstance. But the story doesn't end there.

### B. Commerce's Response to the COVID-19 Pandemic

Ajmal submitted a request to reconsider the First Denial on April 19, 2020. First Request to Reconsider at 1. Less than a week later, on April 24, 2020, Commerce unilaterally tolled the deadlines for all AD and CVD administrative reviews by 50 days. First Tolling Memo at 1. Commerce stated the tolling was "[i]n response to operational adjustments due to COVID-19 . . . ." Id. Furthermore, Commerce reasoned that "[t]olling administrative review deadlines makes

Court No. 21-00587 Page 10

available resources and personnel needed to continue performing E&C's other functions, such as initiating and conducting AD/CVD investigations in accordance with statutory deadlines, as well as conducting remand proceedings in accordance with deadlines established by the courts." Id. at 2.

By taking the extraordinary action of tolling the deadlines for all administrative reviews by 50 days, Commerce arguably recognized "operational adjustments due to COVID-19" during April of 2020 as extraordinary circumstances. Id. at 1. The total delay to the investigation by Ajmal, caused by its operational issues due to COVID-19, consisted of less than two hours. The total delay to the review by Commerce, in response "to operational adjustments due to COVID-19," consisted of 50 days or 1,200 hours, plus a subsequent additional 60 days.[1] It was an abuse of discretion for Commerce, on May 7, 2020, with both delays before it, to reason that filing issues due to COVID-19 are so different from operational adjustments due to COVID-19 that they do not constitute sufficient extraordinary circumstances to permit a slightly late filing here to avoid serious consequences. At this point, Commerce should have reconsidered Ajmal's EOT with the new circumstances in mind.

Commerce attempts to distinguish its tolling of deadlines by arguing the tolling was due to "operational adjustments" and "unprecedented workloads." Def. Br. at 13 (quoting IDM at 14). This difference is one without meaning as, in Commerce's own words, COVID was responsible for the operational adjustments. See First Tolling Memo at 1–2. In evaluating a delayed update to a filing, the court has found circumstances caused by the COVID-19 pandemic such as "near-

---

[1] First Tolling Memo at 1; Second Tolling Memo at 1. The court is aware that Commerce had cautioned counsel about deadlines prior to the COVID lockdown but finds these circumstances minimally relevant here, given the effect of COVID on all parties.

total lockdown," closed offices, and the robustness of "work from home infrastructure" to be relevant to Commerce's decision making, even months later in the COVID-19 environment (August 2020 as opposed to April 2020). See Celik Halat ve Tel Sanayi A.S. v. United States, 46 CIT __, __, 557 F. Supp. 3d 1363, 1376 (2022). These circumstances mirror those experienced by Ajmal in April 2020, and Commerce has failed to show that "operational adjustments" within Commerce resulting in an extraordinary 110-day delay do not stem from the same essential cause. The court is a court of equity, as well as law, yet Commerce asks the court to allow it to enforce its deadlines in the strictest way possible with a seeming disregard for Commerce's own actions. Commerce must consider the serious consequences it rests upon parties in the light of the allowances it gives itself. Here no prejudice to any party could result because Commerce's tolling completely prevented it. Further, Commerce's normal interest in enforcing its deadlines, even as to minor delays, was no longer a concern here.

Accordingly, Commerce abused its discretion in denying Ajmal's First Request for Reconsideration. The court remands to Commerce to accept and consider Ajmal's Section A filing and complete the review.

## CONCLUSION

For the foregoing reasons, the court remands to Commerce for a determination consistent with this opinion. The remand shall be issued within 90 days hereof. Comments may be filed 30 days thereafter and any response 15 days thereafter.

/s/      Jane A. Restani
Jane A. Restani. Judge

Dated: October 28, 2022
New York, New York